UNITED STATES, Appellant
and Cross–Appellee,

v.

Paul R. MILLER, Master Sergeant,
U.S. Air Force, Appellee and
Cross–Appellant.

No. 96–5010.
Crim.App. No. 31206.

U.S. Court of Appeals for
the Armed Forces.

Argued June 3, 1997.

Decided Sept. 30, 1997.

Sullivan, J., filed opinion concurring in part and in the result.

For the Accused: *William J. Holmes* (argued); *Captain W. Craig Mullen* (on brief).

For the United States: *Captain Mitchel Neurock* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, Miller was convicted by officer members of pandering (4 specifications), obstruction of justice (3 specifications), showing pornographic movies to minors, assault and battery, attempted indecent assault, and violating a general regulation by providing alcoholic beverages to minors, in violation of Articles 134, 128, 80, and 92, Uniform Code of Military Justice, 10 USC §§ 934, 928, 880, and 892, respectively. Miller was sentenced to a dishonorable discharge, 10 years' confinement, and reduction to the lowest enlisted grade.

The convening authority ordered a post-trial hearing pursuant to *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), to determine the following: (1) whether there was "improper" knowledge of and "consideration by" court members "during the trial of alleged threats against trial participants;" (2) whether there was "unlawful command influence" over the court members during "the clemency submission process;" and (3) whether there were "related matters" which warranted further factfinding. Following this post-trial hearing, the convening authori-

ty reduced Miller's confinement to 8 years but otherwise approved the sentence.

On May 7, 1996, the Court of Criminal Appeals set aside the findings of guilty of pandering and instead affirmed findings of guilty of solicitation of another to commit prostitution; dismissed the charge of showing pornographic movies; modified 2 specifications; and reassessed the sentence to a dishonorable discharge, 4 years' confinement, and reduction to the lowest enlisted grade. 44 MJ 549, 555–57, 566.

Miller then filed an extraordinary writ in the Air Force Court of Criminal Appeals alleging illegal continued confinement. The Court of Criminal Appeals denied Miller's extraordinary writ on May 31, 1996. 44 MJ 582.

Subsequently, the Judge Advocate General of the Air Force certified the following issues:

I. WHETHER THE OFFENSE OF PANDERING IN VIOLATION OF ARTICLE 134, UCMJ, para. 97b(2), REQUIRES A THIRD PARTY.

II. WHETHER OPINIONS OF THE AIR FORCE COURT OF CRIMINAL APPEALS ARE SELF–EXECUTING.

III. WHETHER, PRIOR TO THE EXPIRATION OF THE TIME PERIOD DURING WHICH RECONSIDERATION CAN BE REQUESTED OR CERTIFICATION BY THE JUDGE ADVOCATE GENERAL SOUGHT, AN AIR FORCE COURT OF CRIMINAL APPEALS OPINION IS "FINAL" OR REMAINS "INCHOATE."

IV. WHETHER ARMY OFFICIALS PREMATURELY SOUGHT TO RELEASE APPELLEE FROM THE UNITED STATES DISCIPLINARY BARRACKS BASED UPON UNOFFICIAL NOTIFICATION BY DEFENSE COUNSEL OF AN INCHOATE, NON–SELF–EXECUTING OPINION OF THE AIR FORCE COURT OF CRIMINAL APPEALS WITH NO DIRECTION FROM A CONVENING AUTHORITY AS REQUIRED BY ARTICLE 66(e), UCMJ.

The defense filed a cross-petition on numerous grounds as well. We granted review of the following issues:

I. WHETHER CROSS–APPELLANT WAS DENIED HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL COURT BECAUSE THE COURT MEMBERS WERE SUBJECTED TO EXTRANEOUS CONSIDERATIONS WHICH MATERIALLY PREJUDICED CROSS–APPELLANT AND VIOLATED HIS CONSTITUTIONALLY PROTECTED PRESUMPTION OF INNOCENCE IF THE MEMBERS' KNOWLEDGE ABOUT ALLEGED THREATS AND THE SECURITY PROCEDURES EMPLOYED IN COURT WERE MATERIALLY PREJUDICIAL TO CROSS–APPELLANT'S RIGHT TO A FAIR TRIAL.

II. WHETHER THE POST–TRIAL HEARING WHICH WAS ORDERED IN THE INSTANT CASE WAS CONDUCTED IN AN IMPROPER MANNER WHICH DEPRIVED CROSS–APPELLANT OF HIS FUNDAMENTAL RIGHTS TO COUNSEL OF HIS CHOICE, TO PRESENT EVIDENCE, AND TO HAVE ALL ISSUES FULLY AND FAIRLY ADDRESSED AND RESOLVED BY A NEUTRAL AND IMPARTIAL TRIBUNAL.

III. WHETHER CROSS–APPELLANT IS ENTITLED TO RECEIVE ADDITIONAL SENTENCE CREDIT OR OTHER APPROPRIATE RELIEF TO PARTIALLY COMPENSATE CROSS–APPELLANT FOR THE ILLEGAL AND UNWARRANTED EXCESS TIME WHICH HE WAS REQUIRED TO BE CONFINED AS A SENTENCED PRISONER BY THE AIR FORCE AFTER HIS APPROVED SENTENCE HAD BEEN SERVED AND COMPLETED.

We hold that the offense of pandering requires three persons and that Miller is not entitled to additional sentence credit. We also order a new post-trial *DuBay* hearing.[1]

---

1. The first granted issue requires factfinding at a properly conducted post-trial hearing. Because

we hold that Miller's post-trial hearing was improperly conducted and order a new hearing, we

## PANDERING

Miller was convicted of 4 specifications of wrongfully enticing a female to engage in a sexual act for hire and reward under Article 134. The basis for Miller's conviction was the testimony at trial of four women who stated that he had offered them cigarettes or money if they would have sexual intercourse with him.

■ Although "Manual explanations of codal offenses are not binding on this Court," they are persuasive indications of how the President, as head of the Executive Branch of Government, perceives an offense, including limitations on the Executive power that are not required by the Code or other applicable law. *United States v. Gonzalez*, 42 MJ 469, 474 (1995). Paragraph 97b, Part IV, Manual for Courts–Martial, United States (1995 ed.), describes the offense of pandering as follows:

(2) *Pandering by compelling, inducing, enticing, or procuring act of prostitution.*

(a) That the accused compelled, induced, enticed, or procured a certain person to engage in an act of sexual intercourse for hire and reward with a person to be directed to said person by the accused;

(b) That this compelling, inducing, enticing, or procuring was wrongful; and

(c) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

(3) *Pandering by arranging or receiving consideration for arranging for sexual intercourse or sodomy.*

(a) That the accused arranged for, or received valuable consideration for arranging for, a certain person to engage in sexual intercourse or sodomy with another person;

(b) That the arranging (and receipt of consideration) was wrongful; and

(c) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the

need not answer the first granted issue at this

armed forces or was of a nature to bring discredit upon the armed forces.

At the Court of Criminal Appeals, Miller argued that the offense of pandering under Article 134 requires three parties to the transaction. That court agreed, dismissed the pandering conviction, and affirmed a conviction for solicitation of another to commit prostitution. 44 MJ at 555–56. In response, that issue was certified to this Court.

At the outset, we note that previous opinions defining pandering have all related to conduct involving at least three parties. *See, e.g., United States v. Gallegos*, 41 MJ 446 (1995), and cases cited therein; *see also United States v. Bohannon*, 20 CMR 870 (AFBR 1955); *United States v. Barcomb*, 3 CMR 623 (AFBR), *rev'd* on other grounds, 2 USCMA 92, 6 CMR 92 (1952).

The Government argues that pandering by compelling, inducing, enticing, or procuring an act of prostitution under Article 134 does not require three parties as shown from the wording of paragraph 97b. The Government contends that the wording of paragraph 97b(2)(a) uses only the term "a person" to describe the individual with whom the prostitute has sexual intercourse, whereas paragraph 97b(3)(a) specifically uses the term "another person" to identify the same relationship.

However, paragraph 97b(2) is not so clear as the Government would have us believe. Paragraph 97b(2)(a), in that same sentence, specifically refers to the person doing the compelling, inducing, enticing, or procuring as the "accused." The person receiving these sexual favors is not referred to as including the accused.

In addition, if pandering under paragraph 97b(2) requires only two parties, then pandering under that provision is, essentially, solicitation of another to commit prostitution. That type of solicitation would carry a maximum punishment of a dishonorable discharge, 5 years' imprisonment, and total forfeitures. Paras. 105e and 97e(2), Part IV. Yet the offense of solicitation to prostitute

time.

oneself has a maximum punishment of only a dishonorable discharge, one year in prison, and total forfeitures. Para. 97e(1). It is unlikely that two such related forms of solicitation would have such disparate maximum punishments.

 When ambiguous, criminal laws are strictly construed in favor of the defendant. *See Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 621, 99 L.Ed. 905 (1955) ("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."); *see also* W. LeFave and A. Scott, Jr., *Substantive Criminal Law* § 2.2(d) at 108 (1986). We now apply this same concept to ambiguous Manual provisions. Paragraph 97(b)(2) is undoubtedly ambiguous. As such, we construe that provision in favor of Miller and hold that the offense of pandering requires three parties.

## POST–TRIAL HEARING

On March 1, 1994, an order was faxed to trial participants that the post-trial hearing would be conducted in the first week of April. On March 2, 1994, the hearing date was changed to March 4, 1994. Miller was unable to contact and retain his civilian defense attorney, William Holmes, until the night before the post-trial hearing. Captain Stenton, Miller's detailed counsel at the post-trial hearing, learned of the post-trial hearing only 2 days before it was to be held. Capt Stenton had no knowledge of Miller's case, did not represent him at trial, had never participated in a *DuBay* hearing, had not prepared or read the clemency package or record, and had never met Miller until the night before the hearing.

Mr. Holmes, Miller's civilian counsel, promptly requested a continuance. In addition, at the post-trial hearing, Capt Stenton and Miller both objected strenuously to conducting the hearing without civilian counsel (Mr. Holmes).

The military judge denied Mr. Holmes' request for a delay. The military judge ruled as follows:

This court finds that Mr. Holmes was aware yesterday that there would be such a hearing and it would [be] held this morning as it is presently being held. This court further finds that Mr. Holmes apparently has accepted representation of Master Sergeant Miller with the full knowledge that he would not and could not be present at this hearing. This is a fact finding hearing. The court finds it somewhat unusual that counsel would hire onto a case knowing full well he could not be present at a particular hearing and betting on "the come" that the court would defer to his schedule rather than the court's schedule. The court is aware that 10 members of this court panel are presently present for the purposes of this hearing. That one of these members is a retired member, that a second one of these members has been brought TDY from Fort Meade, Maryland, to attend this proceeding. Further, this military judge has remained here for the specific intent of [holding] this hearing.... I find that the request by Mr. Holmes is untimely. I further find that the request would cause inconvenience, expense, and scheduling problems to the Government. When weighing those two, the court finds Mr. Holmes's actions shall not drive this court, therefore, the request for delay by Mr. Holmes is denied and this hearing shall proceed.

At the hearing, which proceeded without Mr. Holmes, the defense requested that the military judge hear testimony from Chaplain Boone, who had previously submitted a sworn affidavit. According to the affidavit, the president of Miller's court-martial panel, Col Reinholt, told Boone that the members knew that a friend of Miller's son had threatened the prosecutor and the military judge in the case and that this was the reason for the extra security measures at trial. The military judge refused to call Chaplain Boone.

In addition to the foregoing, Mr. Holmes indicated during oral argument before this Court that had he represented Miller at the post-trial hearing, he would have done a number of additional things. By way of ex-

ample, Mr. Holmes stated that he would have: (1) called the Staff Judge Advocate, Colonel Smith, to testify regarding his communication with the president of the court-martial panel; (2) made additional objections; and (3) requested an opportunity to speak with Col Reinholt's secretary regarding whether Col Reinholt's letter denying Miller clemency had been sent to the other panel members.

### Request for a continuance

■ A military judge's decision to grant or deny a continuance must be tested for an abuse of discretion even where failure to grant a continuance would deny an accused the right to a civilian counsel. *United States v. Thomas,* 22 MJ 57, 59 (CMA 1986) (citation omitted). "An 'abuse of discretion' exists where 'reasons or rulings of the' military judge are 'clearly untenable and ... deprive a party of a substantial right such as to amount to a denial of justice'; it 'does not imply an improper motive, willful purpose, or intentional wrong.'" *United States v. Travers,* 25 MJ 61, 62 (CMA 1987), quoting *Guggenmos v. Guggenmos,* 218 Neb. 746, 359 N.W.2d 87, 90 (1984), citing *Pettegrew v. Pettegrew,* 128 Neb. 783, 260 N.W. 287 (1935).

■ A military judge should grant a continuance in order to allow an accused a reasonable opportunity to obtain civilian counsel for the proceeding. *See, e.g., Thomas,* 22 MJ at 59; *United States v. Kinard,* 21 USCMA 300, 45 CMR 74 (1972). "[I]t ought to be an extremely unusual case when a man is forced to forego civilian counsel and go to trial with assigned military counsel rejected by him." *Kinard, supra* at 303, 45 CMR at 77 (quoting Kinard's appellate defense counsel). Although the right to civilian counsel "is not absolute, ... an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Thomas,* 22 MJ at 59 (internal quotation marks omitted), quoting *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1615–1616, 75 L.Ed.2d 610 (1983), quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). "[T]he controlling factor is whether the [accused] was accorded the opportunity to secure counsel of his choice." *Kinard, supra* at 304, 45 CMR at 78.

■ The factors used to determine whether a military judge abused his or her discretion by denying a continuance include "surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice." F. Gilligan and F. Lederer, *Court-Martial Procedure* § 18–32.00 at 704 (1991)(footnotes omitted).

Applying those factors to Miller's case, we see that the following apply:

- surprise: On March 2, 1994, Miller's post-trial hearing was rescheduled from April to March 4, 1994, which gave civilian defense counsel little time either to attend or prepare for the hearing.

- timeliness of the request: The motion for a continuance was promptly made.

- other continuance requests: Miller had not moved previously to delay the post-trial hearing.

- good faith of the moving party: Miller explained (and no one disputed) that he was unable to contact civilian defense counsel until the day before the post-trial hearing.

- prior notice: The notice given was insufficient to allow Miller to obtain a civilian counsel who could attend and prepare for the post-trial hearing.

The military judge focused on the inconvenience of a delay in the proceedings.

According to Judge Duncan:

The erroneous denial of [defendant's] motion [for a continuance in order to obtain civilian counsel] must, of course, prejudice his substantial rights.... Where "no harmful consequence resulted from denial of a continuance, there is no ground for complaint, and where the withdrawing or

discharged counsel was adequately replaced and the defense properly presented, it is generally held that refusal of a postponement was not prejudicial to the accused."

*Kinard,* 21 USCMA at 306, 45 CMR at 80 (citations omitted), quoting 17 Am Jur 2d, Continuance, § 35, Withdrawal or discharge of counsel, at 158.

◼ Where a military judge denies a continuance request made for the purpose of obtaining civilian counsel, prejudice to the accused is likely. Certainly in this case, where defense counsel had so little time to prepare, it would be difficult to find harmless error. During oral argument before this Court, Mr. Holmes articulated a number of actions he would have taken at the post-trial hearing if the continuance had been granted and he had represented Miller at the post-trial hearing. Considering those reasonable actions which were not taken and the on-the-record admission that detailed defense counsel was unprepared for the post-trial hearing, we conclude that Miller was prejudiced.

◼ Post-trial *DuBay* hearings must satisfy basic due process concepts. *United States v. Stone,* 26 MJ 401 (CMA 1988); *United States v. Levite,* 25 MJ 334 (CMA 1987). At the very least, accused persons should have notice of the post-trial hearing, the right to be heard at the proceeding, the right to present witnesses and "be represented by counsel, have an opportunity to cross-examine witnesses, ... and have a verbatim record of the proceedings." *Levite,* 25 MJ at 339. Based upon the foregoing discussion, we hold that the military judge abused his discretion by denying Miller a continuance.

### Military judge's refusal to call Chaplain Boone

◼ RCM 703(b), Manual, *supra,* provides that "[e]ach party is entitled to the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be relevant and necessary." The Due Process Clause of the Fifth Amendment and the right to compulsory process under the Sixth Amendment to the Constitution also give accused persons

the right to call relevant witnesses for their defense. *United States v. Williams,* 3 MJ 239, 242–43 (CMA 1977).

◼ We review a military judge's denial of a defense request to produce a witness under an abuse-of-discretion standard. *United States v. Ruth,* 46 MJ 1, 3 (1997); *United States v. Breeding,* 44 MJ 345, 349 (1996); *United States v. Gagan,* 43 MJ 200, 203 (1995). We examine whether " 'on the whole,' denial of the defense witness was improper." *Ruth,* 46 MJ at 3, citing *United States v. Tangpuz,* 5 MJ 426, 429 (CMA 1978); *United States v. Manos,* 17 USCMA 10, 16, 37 CMR 274, 280 (1967).

◼ "[I]f the testimony of a given witness is material, the live presence of that witness must be furnished or the proceedings abated, unless, in the sound discretion of the trial judge, the testimony of that witness would be merely cumulative to the testimony of other defense witnesses." *Williams,* 3 MJ at 243 (citations and footnote omitted). Testimony of a witness is "necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." *Breeding,* 44 MJ at 350 (citation omitted).

Chaplain Boone's testimony was both relevant and necessary to a material issue in the post-trial hearing. Had Chaplain Boone testified, the defense could have further explored the members' possible knowledge of threats to the prosecutor and military judge during Miller's trial. In addition, the president of Miller's court-martial panel, Col Reinholt, testified at the post-trial hearing contrary to the assertions made by Chaplain Boone in his affidavit. Boone's testimony at the post-trial hearing would have enabled the military judge to assess Boone's credibility in the same manner in which he assessed the credibility of Col Reinholt. Clearly, Chaplain Boone's testimony would have contributed to the defense's presentation during the post-trial hearing.

◼ We next examine whether Miller was prejudiced by exclusion of Chaplain Boone's testimony. Because an accused has

the right to present witnesses under the Constitution and RCM 703(b), the Government must show that this error was harmless beyond a reasonable doubt. *Gagan,* 43 MJ at 203, citing *United States v. Brown,* 41 MJ 1 (CMA 1994). The Government has not met this burden. We are not satisfied beyond a reasonable doubt that the error was harmless.

Based on our earlier comments, 47 MJ at 359, on concepts of fairness, we hold that the military judge at the post-trial hearing abused his discretion by refusing to allow the defense to present the testimony of Chaplain Boone. Having thus concluded that Miller's post-trial hearing was conducted in an improper manner, we conclude that further factfinding at a new post-trial hearing is required.

## CONFINEMENT ISSUES

In order to address Granted Issue III, this Court must examine Certified Issues II, III, and IV at the same time. Granted Issue III is as follows:

WHETHER CROSS–APPELLANT IS ENTITLED TO RECEIVE ADDITIONAL SENTENCE CREDIT OR OTHER APPROPRIATE RELIEF TO PARTIALLY COMPENSATE CROSS–APPELLANT FOR THE ILLEGAL AND UNWARRANTED EXCESS TIME WHICH HE WAS REQUIRED TO BE CONFINED AS A SENTENCED PRISONER BY THE AIR FORCE AFTER HIS APPROVED SENTENCE HAD BEEN SERVED AND COMPLETED.

Certified Issue II asks:

WHETHER OPINIONS OF THE AIR FORCE COURT OF CRIMINAL APPEALS ARE SELF–EXECUTING.

Certified Issue III questions:

WHETHER, PRIOR TO THE EXPIRATION OF THE TIME PERIOD DURING WHICH RECONSIDERATION CAN BE REQUESTED OR CERTIFICATION BY THE JUDGE ADVOCATE GENERAL SOUGHT, AN AIR FORCE COURT OF CRIMINAL APPEALS OPINION IS "FINAL" OR REMAINS "INCHOATE."

Finally, Certified Issue IV is:

WHETHER ARMY OFFICIALS PREMATURELY SOUGHT TO RELEASE APPELLEE FROM THE UNITED STATES DISCIPLINARY BARRACKS BASED UPON UNOFFICIAL NOTIFICATION BY DEFENSE COUNSEL OF AN INCHOATE, NON–SELF–EXECUTING OPINION OF THE AIR FORCE COURT OF CRIMINAL APPEALS WITH NO DIRECTION FROM A CONVENING AUTHORITY AS REQUIRED BY ARTICLE 66(e), UCMJ.

Granted Issue III and Certified Issue IV are clearly the opposite sides of the same coin, and the rationale for their holdings depends upon our resolution of certified issues II and III.

On May 7, 1996, the Court of Criminal Appeals announced its decision in this case and reduced Miller's sentence to 48 months' confinement. 44 MJ at 565. Defense counsel faxed a copy of the lower court's decision to the U.S. Disciplinary Barracks (USDB). Answer to Final Brief at 1. The minimum release date was then calculated by the Office of the Command Judge Advocate at the USDB and determined to be May 8, 1996.

Air Force authorities concluded that the proposed release was premature, since The Judge Advocate General had not decided whether to certify the case to the United States Court of Appeals for the Armed Forces. To forestall [Cross–Appellant's] premature release from confinement, Air Force authorities ordered [his] transfer from the [USDB] to the Charleston Naval Brig. . . .

44 MJ at 583. Miller was confined in the brig from May 16 to June 5, 1996. He was released after the Judge Advocate General filed the Certificate for Review in this case. Answer to Final Brief at 1.

Miller filed a Writ of Habeas Corpus in the Court of Criminal Appeals upon transfer from the USDB to the Charleston brig, where he was held until his case was certified to this Court. The Court of Criminal Appeals held that its decisions are self-execut-

ing and final although not accompanied by a mandate. That court then stated that

> [o]ur conclusion that we have the authority to order [the accused's] release does not mean this Court should exercise that authority at this time. Absent a clear showing that extraordinary relief is required to preclude an injustice, we are reluctant to invoke our All Writs authority. Stated simply, we are not satisfied that [the accused] has shown that his release prior to the expiration of the designated period for seeking further review of our decision is necessary to prevent an injustice.

44 MJ at 583–84. The lower court explained that its decisions are not inchoate and that certification by the Judge Advocate General or a motion for reconsideration does not vacate its decisions. *Id.* at 584. Further, the court explained that Article 66(e), UCMJ, 10 USC § 866, "directs the Judge Advocate General to instruct that action be taken in accordance with our decisions." *Id.* The Court of Criminal Appeals then noted that the Judge Advocate General had 30 days to certify the case and that there was not a sufficient "basis at this time for granting the requested relief." *Id.*

During oral argument, appellate defense counsel stated that Air Force regulations did not address this issue. We reject Miller's contention that Air Force regulations do not set forth an orderly procedure for notification of the appropriate convening authority when action has been taken in a case. *See* paras. 11.11 and 11.12, Air Force Instruction 51–201 (28 July 1994).

After an opinion is issued, two 30–day periods run concurrently: the 30–day period for reconsideration by the Court of Criminal Appeals, Rule 19, Rules of Practice and Procedure, United States Courts of Criminal Appeals, 44 MJ LXXI (May 1, 1996), and the period for certification to this Court, Rules 19(b) and 22(b), 40 MJ LXXII–LXXIII and LXXVII–LXXIX, Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces (October 12, 1994).

■ The decisions of this Court and the court below are "not self-executing." *United*

*States v. Kraffa,* 11 MJ 453, 455 (CMA 1981)(holding that "[a] decision of the Court of Military Review,[2] however, is not self-executing. The court issues no mandate, but its decision is forwarded to the convening authority for *further action.*"); *United States v. Tanner,* 3 MJ 924, 926 (ACMR 1977) (holding that "[n]either the decisions nor the opinions of appellate courts, however, are self-executing; cases must be returned to those lower levels where officials and parties can be ordered to implement the court's judgment"). The Judicial Branch is not an executive arm but depends on the Judge Advocate General and lower officials to execute its orders.

■ If the Judge Advocate General immediately decides not to pursue a case any further, there must be immediate notice to the convening authority of the opinion of the Court of Criminal Appeals and immediate direction to release an accused or conduct a hearing under RCM 305, Manual, *supra,* on pretrial confinement. *United States v. Turner,* 47 MJ 348 (1997). This reflects Article 66(e), which reads:

> The Judge Advocate General shall, unless there is to be further action by the President, the Secretary concerned, the Court of Appeals for the Armed Forces, or the Supreme Court, instruct the convening authority to take action in accordance with the decision of the Court of Criminal Appeals.

■ If there is not such an immediate decision, there will be a 30–day period during which the Judge Advocate General is considering whether to accept the lower court's opinion or to pursue it further by way of a motion for reconsideration or certification to this Court. During such period, an accused remains in confinement because the opinion below is inchoate. This reflects Article 66(e), which does not require the Judge Advocate General to provide the convening authority with notification and instructions to release the accused or conduct an RCM 305 hearing "unless" there will not be further consider-

---

**2.** *See* 41 MJ 213, 229 n. * (1994).

ation by other authorities—a formulation which implies, for instance, that the 30 days that Congress gave the Judge Advocate General to decide whether to certify a case is a *reasonable period of time to withhold this release instruction.*

■ After considering the matter, if the Judge Advocate General decides to certify a case to this Court, an accused's interest in the favorable decision of the court below (even if inchoate) requires either that the accused be released in accordance with that decision or a hearing on continued confinement be conducted under RCM 305. *United States v. Turner, supra; Moore v. Akins,* 30 MJ 249 (CMA 1990).

We understand that, in his exuberance, appellate defense counsel notified the confinement facility and his client of the lower court's opinion. However, the aforementioned 30–day period had not elapsed when appellate defense counsel demanded release of Miller. Thus, we hold that Miller is not entitled to any additional confinement credit, except for credit under *United States v. Allen,* 17 MJ 126 (CMA 1984).

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to a convening authority who may order a new post-trial factfinding hearing or a rehearing.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in part and in the result):

Resolution of the confinement-credit issue by the majority is premature in light of the ordering of a hearing under *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), in this case. Moreover, I am not prepared to join that portion of the opinion because, in my view, it may conflict with the decision of this Court in *Moore v. Akins,* 30 MJ 249, 253 (CMA 1990) ("decisions of these 'courts' [of military review (now-courts of criminal appeals)] must be taken into account for purposes of post-trial confinement even before they have become 'final' "). Finally, in *United States v. Combs,* 47 MJ 330 (1997), a majority of this Court ordered sentence relief for the punitive action of reduction taken towards a servicemember after his sentence was set aside by a Court of Military Review but before this Court affirmed that decision. That accused had immediately been released from confinement and had been directed by military authorities to resume his prior rank. The majority makes no attempt to reconcile *Combs* with its dicta in this case.