ERDMANN, Judge
(dissenting):
I respectfully dissent. I find no clear abuse of discretion in the military judge’s refusal to[1] grant a continuance and would affirm the Air Force Court of Criminal Appeals (AFCCA) on Issue I.[1]
The majority decision concludes that it would be an unusual case where a judge denies “an initial and timely request for a continuance in order to obtain civilian counsel, particularly after the judge has criticized appointed military counsel.” The majority opinion goes on to hold that the military judge erred by exercising an “inelastic attitude” in rescheduling Wiest’s trial.
This was not an initial request for continuance as the military judge had already granted a 34-day continuance to allow Wiest the opportunity to find available civilian counsel *280 after he “fired” his original military counsel. Wiest had been detailed two new military attorneys whom he accepted without reservation and who effectively represented him throughout the trial. The record simply does not support either the conclusion that the military judge was “inflexible” in regard to the second requested continuance or that Wiest was prejudiced as a result of the denial.

Factual Background

Charges were preferred against Wiest on July 27, 1998, and a hearing pursuant to Article 32, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 832 (2000), was scheduled for August 4, 1998. As a result of a motion by Wiest to be represented by the circuit defense counsel, the Article 32 hearing was delayed until September 16. Following the Article 32 hearing, charges were referred on November 30, and the parties agreed upon a February 2, 1999 trial date.
On February 2, all parties and witnesses were present and prepared for trial at the U.S. Air Force Academy. Before Wiest entered his pleas, however, his defense attorneys made a motion for a new Article 32 investigation. The basis for the motion was that during the first Article 32 hearing, the Government had informed the Article 32 investigating officer and defense counsel that certain firewall logs did not exist. It was later discovered by the defense that these logs did in fact exist. The defense argued that these logs were critical to their case and that a new Article 32 investigation should be held. Granting the motion on the day of trial would have had the effect of vacating the February 2 trial date.
The military judge conducted a hearing on the motion and pressed the defense as to why they had not earlier challenged the Government’s assertion that the logs had been destroyed. The defense counsel responded that he believed that he could rely upon the representations of the Government. The military judge ultimately denied the motion for a new Article 32 investigation, noting that the “availability of the firewall logs, regardless of their completeness, was unappreciated by both the prosecution and the defense.”
After the military judge announced his decision, Wiest made the following statement:
Your Honor, in light of your statements that my counsel were ineffective at my Article 32 hearing, as well as throughout the proceedings leading up to this court-martial, at this time, I would like to fire them both.
The military judge responded that he did not think that he ever used the term “ineffective” nor had he questioned the defense attorneys’ effectiveness, and he thought that Wiest had misunderstood his statements to the defense counsel. In fact, while the record reflects that the military judge did have a spirited exchange with the defense counsel, he did not at any time state that the defense attorneys were ineffective nor did his ruling reflect any such conclusion.
Nevertheless, over the next two days the military judge held a series of hearings to determine the availability of new military counsel for Wiest and a new trial date. The trial counsel consulted with their civilian and military witnesses and requested a trial date of March 8. During this period Wiest and defense counsel were able to locate military counsel that would be available for the March 8 trial date. During a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000) on February 4, 1999, the military judge emphasized to Wiest a disinclination to grant a further continuance:
I don’t control whether counsel is acceptable to you. I do, however, control when the trial proceeds. And, the trial is going to proceed on the 8th of March 1999, unless somebody convinces me otherwise by very strong and compelling evidence that it has to be delayed.
On February 8, Wiest retained Frank J. Spinner, a civilian attorney, to represent him in addition to his two detailed military counsel. Wiest retained Mr. Spinner even though he knew Mr. Spinner would not be available on March 8 and was aware of the judge’s disinclination to grant a further delay. Mr. Spinner formally entered his appearance as civilian counsel on February 10 and at that time requested that the trial be delayed for *281 six weeks until April 19 to accommodate his schedule.
The military judge denied the request that same day, stating that he had made clear to Wiest on the record on February 2 that any replacement counsel must be available and prepared for trial on March 8 and if Mr. Spinner could not be available and prepared on that date then he was not reasonably available. Trial counsel also opposed the request, albeit two days later, on the grounds that it was unnecessary because Wiest had, and still did have, sufficient time to obtain civilian counsel who could be available on March 8. When the parties assembled for the court-martial on March 8, Wiest renewed his request for a continuance on the grounds that his civilian counsel was unable to attend the court-martial due to his scheduling conflict.[2] That request was denied as well.
Prior to the beginning of trial on March 8, Wiest accepted his two newly appointed military counsel without reservation and at that time the military judge released Wiest’s original military counsel. The new military counsel represented Wiest throughout the court-martial. Wiest did not attempt to discharge his second set of military counsel, did not express any dissatisfaction with their performance and did not, at any stage, raise any issue of ineffective assistance of counsel. Indeed, his military counsel succeeded in winning an acquittal on all but one lesser-included offense.

Constitutional Right to Counsel of Choice

While the Sixth Amendment guarantees the assistance of counsel in all criminal prosecutions, it provides only a qualified — not absolute — right to retain counsel of the defendant’s own choosing:
[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial, and that in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused’s relationship with his lawyer as such. Thus, while the right to select and be represented by one’s preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.
Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (citations and internal quotation marks omitted).
In reviewing the “adversarial process” in this ease, I note that Wiest had two competent, prepared advocates representing him. This is not a case in which the military judge’s action resulted in the defendant being forced to trial with an inadequately prepared attorney or no attorney at all. As the military judge pointed out, “not everyone can be represented by F. Lee Bailey, Johnny Cochran, or even Mr. Frank Spinner.” Notwithstanding the absence of Mr. Spinner, the fairness of the adversarial process was preserved. The parameters of the constitutional right to counsel of choice were further clarified in United States v. Hughey, 147 F.3d 423, 428 (5th Cir.1998) (citations and internal quotation marks omitted):
While we concur that trial lawyers are not for the most part fungible, the Sixth Amendment simply does not provide an inexorable right to representation by a criminal defendant’s preferred lawyer. Indeed, there is no constitutional right to representation by a particular attorney. The Sixth Amendment right to counsel of choice is limited, and protects only a paying defendant’s fair or reasonable opportunity to obtain counsel of the defendant’s choice.
Wiest was afforded a fair and reasonable opportunity to obtain civilian counsel of his own choosing. On February 2, when Wiest requested a change of counsel, the military judge granted Wiest a 34-day continuance until March 8. He even confirmed that the date was firm two days later. Thus, even from the more conservative date of February 4, Wiest had 32 days to obtain counsel of his choosing. Thirty-two days is reasonable *282 enough time to secure counsel. See United States v. Carroll, 510 F.2d 507, 510 (2d Cir. 1975)(20 days “reasonable, even generous”); see also Ungar v. Sarafite, 376 U.S. 575, 590, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)(five days “not a constitutionally inadequate time” to retain counsel).
Most cases in this area address the situation where a “replacement” attorney is sought, not an “additional” attorney as in this case. Few federal courts have considered an appellant’s right to representation by multiple counsel. Where that issue has been addressed, courts have generally found no abuse of discretion in the denial of a requested continuance when the appellant was otherwise represented by qualified and competent counsel. See, e.g., United States v. Riccobene, 709 F.2d 214, 231 (3d Cir.1983); United States v. McManaman, 653 F.2d 458, 460 (10th Cir.1981). The “burden [of scheduling trials] counsels against continuances except for compelling reasons.” Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The court’s schedule is a matter of necessary discretion, and should generally not be subordinated to the schedules of the lawyers that appear before it.[3] Id.
A defendant’s qualified right to counsel does not extend to an inflexible insistence on a specific attorney who cannot comply with the court’s reasonable schedule. Not only was Wiest provided with two competent defense attorneys, but the March 8 trial date gave him almost five weeks to secure an additional civilian attorney if he so chose. This was not an unreasonably short period of time. Wiest’s second request for a continuance of an additional six weeks to accommodate Mr. Spinner’s schedule was simply unreasonable in light of the previous proceedings in this case. In addition, Wiest chose to continue with Mr. Spinner rather than make timely efforts to secure other civilian counsel in order to “preserve the issue for appellate purposes.” Wiest was effectively represented in the adversarial process and there was no deprivation of the constitutional right to counsel.

Statutory Right to Counsel of Choice

Article 38(b), UCMJ, 10 U.S.C. § 838(b) (2000), establishes the right of an accused to representation in his defense. Subparagraph (3) provides that an accused is entitled to detailed military counsel or to military counsel of his choice if reasonably available. Sub-paragraph (2) provides that “[t]he accused may be represented by civilian counsel if provided by him.” The right to counsel under Article 38(b) is, in significant respects, broader than that of the Sixth Amendment. Article 38; United States v. Gnibus, 21 M.J. 1, 6 (C.M.A.1985). This additional breadth notwithstanding, the statutory right to counsel of choice, including civilian counsel of choice, “is not absolute and must be balanced against society’s interest in the efficient and expeditious administration of justice.” United States v. Thomas, 22 M.J. 57, 59 (C.M.A.1986)(citing Morris.)
In Thomas this Court found no abuse of discretion in the denial of an eight-day continuance where defendant had previously been granted a twenty-day continuance and had béen warned that a second continuance would not be granted. Id. at 59. Although civilian counsel failed to appear on the set trial date apparently due to a medical emergency in his family, detailed defense counsel ably represented defendant. Similarly, in United States v. Montoya, 13 M.J. 268, 274 (C.M.A.1982), this Court held that “the accused’s unfettered choice to select a civilian counsel at any time during the trial ... *283 cannot operate to unreasonably delay the progress of the trial.”
An accused can always discharge his attorney, but if he desires to substitute another attorney for the one discharged, his [Article 38(b) ] right is qualified in “that the request for substitution of counsel cannot impede or unreasonably delay the proceedings.”
Id. (quoting United States v. Jordan, 22 C.M.A. 164, 167, 46 C.M.R. 164, 167 (1973)).
Generally, a military judge may grant a continuance whenever fairness renders it appropriate to do so. Article 40, UCMJ, 10 U.S.C. § 840 (2000); Rule for Courts-Martial 906(b)(1). After an accused has been given a fair or reasonable opportunity to obtain counsel of choice, the decision to grant or deny a continuance to permit a further opportunity to do so rests within the broad discretion of the trial court and, absent clear abuse, will not be overturned. Thomas, 22 M.J. at 59.
In United States v. Miller, 47 M.J. 352 (C.A.A.F.1997), this Court applied eleven factors to be considered in evaluating whether a military judge abused his discretion in denying a motion for a continuance. Id. at 358 (citing F. Gilligan & F. Lederer, Courb-Martial Procedure § 18-32.00 at 704 (1991)). The AFCCA made factual findings in regard to the applicable Miller factors and held that the military judge’s denial of the continuance was not an abuse of discretion.[4] United States v. Wiest, ACM 33964, 2002 WL 31235026 (Sep. 24, 2002). This Court is bound by the lower court’s findings of fact unless they are clearly erroneous. United States v. Benedict, 55 M.J. 451, 454 (C.A.A.F.2001).
The record in this case does not support the conclusion that the military judge’s denial of the second requested continuance was “clearly untenable and ... deprive[d] a party of a substantial right such as to amount to a denial of justice,” which is the abuse of discretion standard for motions for continuance. Miller, 47 M.J. at 358 (citation and internal quotation marks omitted).

No Showing of Prejudice

Wiest argues that he was prejudiced because trial lawyers are not fungible, and he therefore has the right to insist upon Mr. Spinner’s services. Wiest misunderstands the scope of the right to counsel of choice. Although trial lawyers are not for the most part fungible, the Sixth Amendment simply does not provide an inexorable right to representation by a criminal defendant’s preferred lawyer. Wheat, 486 U.S. at 159, 108 S.Ct. 1692. Moreover, despite Mr. Spinner’s experience as a litigator, it is pure speculation to conclude that he would have obtained a better result for Wiest than the one Wiest received from his detailed counsel.
Where there is no prejudice there should be no reversal. In United States v. Kinard, this Court stated:
Where no harmful consequence resulted from denial of a continuance, there is no ground for complaint, and where the withdrawing or discharged counsel was adequately replaced and the defense properly presented, it is generally held that refusal of a postponement was not prejudicial to the accused.
21 C.M.A. 300, 306, 45 C.M.R. 74, 82 (citations and internal quotation marks omitted). Likewise, in United States v. Wellington, 58 M.J. 420, 425 (C.A.A.F.2003), we stated: “[W]e need not decide if the military judge abused his discretion [by denying a continuance request], because Appellant has not established that he was prejudiced.” Here, no harmful consequence resulted: Wiest was not forced to trial without adequately prepared, competent counsel, much less without any counsel at all. Wiest has not offered any other facts that would support the conclusion that he was denied a fair trial. As Wiest was not prejudiced, any error must be deemed harmless.

Conclusion

There was no deprivation of either Wiest’s Sixth Amendment or Article 38(b) qualified right to counsel of choice. Even if we were *284 to assume that the military judge’s comments to the initial military counsel were inappropriate, that issue was adequately remedied when Wiest secured two new military attorneys. He accepted these attorneys without reservation and at no point has he complained of their competence or representation. In addition, Wiest was afforded a fair and reasonable opportunity to procure his choice of civilian counsel and was clearly on notice that he should find counsel who was available on the selected date. Instead, he knowingly selected unavailable civilian counsel.
The language utilized by the military judge when he announced the rescheduled trial date[5] does not reflect an inflexible attitude towards further continuances — rather it reflects a clear statement that further continuances would not be allowed except for strong and compelling reasons. I am reluctant to find error where the military judge both allowed an objectively reasonable time for Wiest to secure additional counsel and where he acted to ensure that Wiest would be adequately represented by prepared and available counsel. Given the broad latitude of the court to control its scheduling, I find no clear abuse of the military judge’s discretion and no deprivation of Wiest’s constitutional or statutory rights in the denial of a continuance.
Finally, it is a rare hearing indeed where a judge’s comments cannot be construed by one party or another as being “negative.” Under the majority opinion, I fear that civilian counsel will be able to “run” the court dockets based upon their scheduling concerns rather than traditional concerns for the sound administration of justice.
I would therefore affirm the decision of the AFCCA.

. Due to its disposition of Issue I, the majority opinion does not address the remaining issues. I would affirm the AFCCA on all issues,

. Rather than actively seek alternative civilian counsel, Wiest apparently elected to keep Mr. Spinner as his civilian defense counsel in order to “preserve the issue for appellate purposes.”

. Lawyers, as officers of the court, should accept cases and clients only to the extent that they are able to adequately represent them. See generally ABA Standards for Criminal Justice Prosecution Function and Defense Function 4-1.3(e)(3d ed. 1993)("Defense counsel should not cany a workload that, by reason of its excessive size, interferes with the rendering of quality representation, endangers the client's interest in the speedy disposition of charges, or may lead to the breach of professional obligations....”); Model Rules of Prof'l Conduct R. 1.7(b) (addressing a lawyer’s duty to his client when his representation may be limited by other considerations, including his representation of another client). Part and parcel of these obligations is the duty not to adopt a schedule that hampers the administration of justice. See United States v. Hanhardt, 156 F.Supp.2d 988, 999-1000 (N.D.Ill.2001).

. The AFCCA weighed the following Miller factors: surprise, length of continuance, prejudice, prior continuances, possible impact on the verdiet, good faith and reasonable diligence of moving party, and prior notice. Wiest, ACM 33964 at 7-12.

. ”[T]he trial is going to proceed on the 8th of March unless somebody convinces me otherwise by very strong and compelling evidence that it has to be delayed.”