DREW, Chief Judge
(dubitante):
I fully concur and join with the majority’s resolution of the expert testimony, failure to state an offense, sentence reassessment, and findings instruction issues. However, while I applaud the majority’s attempt to reconcile the rule announced by the Court of Appeals for the Armed Forces (CAAF) in United States v. Miller, 47 M.J. 352 (C.A.A.F. 1997) and derived from Moore v. Akins, 30 M.J. 249 (C.M.A. 1990), with Rule for Courts-Martial (R.C.M.) 305, which Miller seeks to implement, I am doubtful that R.C.M. 305 has any application to the facts in this case.
The Constitution vests Congress with the power to “make Rules for the Government and Regulation of the land and naval Forces.” U.S. Const, art. I, § 8, cl. 14. Congress delegated to the President, as Commander in Chief of the Armed Forces, the authority to prescribe the Rules for Courts-Martial in Article 36, UCMJ. The President has exei’cised his delegated authority in R.C.M. 305, in which he authorized pretrial confinement, established the proper procedures to follow to order and review such confinement, and detailed the remedy for noncompliance with those procedures.
R.C.M. 305, by its very terms, applies to pretrial confinement. That is not to say that such confinement can never arise as a result of the post-trial review process. A confined appellant, having received a favorable final appellate decision that set aside his sentence to confinement (alone or along with setting aside one or more findings) and authorized a rehearing, could most certainly fall within the ambit of R.C.M. 305. If the convening authority desires to keep an appellant in confinement until a new trial, the appellant would become a pretrial confinee and the requirements of R.C.M. 305 would apply. However, before an appellate decision has become final, the confinee remains an adjudged and sen *711 tenced prisoner and not a pretrial confinee. See United States v. Kreutzer, 70 M.J. 444, 451 (C.A.A.F. 2012) (Erdmann, J., dissenting). R.C.M. 305 simply does not apply while an appellate decision setting aside a sentence to confinement remains inchoate.
As the majority notes above, Congress, in response to Moore, enacted Article 57a(c):
In any case in which a court-martial sentences a person to confinement and the sentence to confinement has been ordered executed, but in which review of the case under section 867(a)(2) of this title (article 67(a)(2)) is pending, the Secretary concerned may defer further service of sentence to confinement while that review is pending.
Article 57a(c), UCMJ (emphasis added).
Even though Congress gave the Executive Branch in Article 57a(c) the authority to defer further military confinement pending appeal—something the Government had argued in Moore that the UCMJ did not previously provide—Congress declined to establish a requirement that the Government must defer further confinement or must conduct a review to justify further confinement. In particular, Congress chose not to amend the UCMJ to adopt a procedure similar to 18 U.S.C. § 3143,[1] which was cited favorably in Moore. See Moore, 30 M.J. at 251. The President, for his part, has not, before, between, or since the Miller and Moore decisions, exercised his statutory authority to promulgate an R.C.M. or other rule requiring a review of continued confinement during appeal.
In neither Moore nor Miller did the CAAF base its holdings on constitutional grounds. Rather, in Moore, it premised its decision on Article 57(d) (now Article 57a(a)), which applies only to unexecuted sentences. As Appellant’s sentence in this case was ordered executed long before we issued our earlier inchoate decision setting aside his findings, Article 57a(a) provides no basis for his requested relief. In Miller, the CAAF premised its decision on Article 66(e), 10 U.S.C. § 866(e), which does not require the Government to implement a Court of Criminal Appeals (CCA) decision which is pending further review by the CAAF. On the contrary, the CAAF recognized that Article 66(e) specifically excludes it:
The Judge Advocate General shall, unless there is to be further action by the President, the Secretary concerned, the Court of Appeals for the Armed Forces, or the Supreme Court, instruct the convening authority to take action in accordance with the decision of the Court of Criminal Appeals.
Miller, 47 M.J. at 361 (quoting 10 U.S.C. § 866(e)) (emphasis added). In Miller, the CAAF recognized Article 66(e) in holding:
If the Judge Advocate General immediately decides not to pursue a case any further, there must be immediate notice to the convening authority of the opinion of the Court of Criminal Appeals and immediate direction to release an accused or conduct a hearing under RCM 306, Manual, supra, on pretrial confinement.
47 M.J. at 361.
Again acknowledging Article 66(e), the CAAF next held:
If there is not such an immediate decision, there will be a 30-day period during which the Judge Advocate General is considering whether to accept the lower court’s opinion or to pursue it further by way of a motion for reconsideration or certification to this Court. During such period, an accused remains in confinement because the opinion below is inchoate.
47 M.J. at 361. However, without citing Article 66(e) or any other Article, the CAAF finally articulated the rule in question in this case:
After considering the matter, if the Judge Advocate General decides to certify a case to [the CAAF], an accused’s interest in the favorable decision of the court below (even if inchoate) requires that the accused be released in accordance with that decision or a hearing on continued confinement be conducted under RCM 305.
47 M.J. at 362.
Miller does not explain how an appellant’s interest in a favorable inchoate decision is *712 any greater (or “sufficiently weighty” as stated in Kreutzer, 70 M.J. at 446) once The Judge Advocate General (TJAG) has certified a CCA decision to the CAAF. An inchoate decision remains inchoate until it is final, withdrawn, or set aside. A decision by TJAG to certify a CCA decision to the CAAF does not make the CCA decision any less inchoate. Indeed, the exercise of TJAG’s statutory authority extends the incomplete nature of the CCA decision rather than ripening it to any degree. It is beyond dispute that an appellant has a profound interest in a favorable CCA decision, but that interest is no more or less weighty once TJAG has certified it to the CAAF. Contrast this to an affirmative decision of TJAG not to certify a CCA decision, or to the expiration of the time to seek reconsideration from the CCA and certification to the CAAF. In those circumstances, Article 66(e) would make the CCA decision final and no longer inchoate and require the Government to implement it, to include complying with R.C.M. 306 if it desires to place an appellant in pretrial confinement pending a rehearing.
Application of the Miller rule in this case results in an inappropriate windfall for Appellant. Unlike the confinees in Moore and Miller, Appellant waited nearly a year from TJAG’s 9 June 2014 certification to raise the issue of his continued confinement. He did so on 3 June 2015. Three days later, the convening authority directed a hearing to consider the matter and that hearing was held on 15 June, during which the hearing officer determined that Appellant should remain in confinement. On 30 June, the CAAF reversed our prior decision, reinstating Appellant’s convictions for sexual assault and burglary. The record does not reflect why the Government did not, on its own initiative, hold a Miller hearing shortly after TJAG’s certification. However, unlike the confinee in Kreut-zer, who remained on death row after the CCA set aside his death sentence until the CAAF issued a writ of mandamus, the conditions of Appellant’s confinement since his tidal have at all times been proper for adjudged and sentenced prisoner with the type of sentence that our decision today finds appropriate. We have found no prejudice Appellant has suffered for the procedural timing failure to follow the Miller rule. Miller required a review of Appellant’s continued confinement. That review determined that continued confinement was appropriate. Because that review was held shortly after Appellant requested it but a year after TJAG certified his case, the majority opinion provides an R.C.M. 305(k)-like automatic day-for-day administrative credit, granting Appellant 365 days administrative credit. I doubt that R.C.M. 305 or Article 66(e) demands such a result.
Judge SANTORO delivered the opinion of the court, in which Senior Judge MAYBERRY joined. Chief Judge DREW delivered a separate dubitante opinion.

. The requirement to conduct the review is found in 18 U.S.C. § 3141.