*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Christian SALINAS**
Aviation Machinist's Mate Second Class (E-5), U.S. Navy
*Appellant*

**No. 202300008**

_____

Decided: 7 February 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Kimberly J. Kelly (arraignment)
Rachel E. Trest (motions and trial)

Sentence adjudged on 18 August 2022 by a general court-martial convened at Naval Air Station Jacksonville, Florida, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for three years, and a dishonorable discharge.

For Appellant:
*Mr. Frank J. Spinner*
*Lieutenant Christopher B. Dempsey, JAGC, USN*

For Appellee:
*Lieutenant Rachel E. Noveroske, JAGC, USN*
*Lieutenant Colonel James A. Burkart, USMC*

Judge MIZER delivered the opinion of the Court, in which Senior Judge KISOR and Judge DALY joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

MIZER, Judge:

Appellant was convicted, contrary to his pleas, of one specification of attempted sexual assault, in violation of Article 80, Uniform Code of Military (UCMJ),[1] and one specification of assault with intent to commit sexual assault, in violation of Article 128, UCMJ.[2] Because these offenses were charged in the alternative,[3] the military judge conditionally dismissed the Article 128, UCMJ, attempt-type assault specification without prejudice until completion of appellate review.[4]

Appellant asserts three assignments of error: (1) whether Appellant's trial defense counsel were ineffective for failing to investigate or use material evidence in his defense; (2) whether Appellant was possibly convicted on the invalid legal theory that he attempted to assault her when he "knew or reasonably should have known" AD3 Sierra[5] was asleep; and (3) if this Court finds that Appellant waived his claim of being convicted on an invalid legal theory, whether his trial defense counsel were ineffective for failing to object.

## I. DISCUSSION

The resolution of this case should be easy enough. Appellant's case was docketed almost three months before this Court's decision in *United States v. Marin*,[6] which held that the crime of attempt requires the Government to prove

_____

[1] 10 U.S.C. § 880.

[2] 10 U.S.C. § 928.

[3] R. at 34.

[4] R. at 918.

[5] Other than the names of Appellant, the judges, and counsel, all names in this opinion are pseudonyms.

[6] 83 M.J. 626 (N-M. Ct. Crim. App. 2023).

an accused had the specific intent to commit the underlying offense and, therefore, an accused cannot be charged or convicted of an attempted sexual assault on the basis that he "reasonably should have known" of an underlying condition.[7]

Both parties agree that Appellant's second assignment of error, which challenges his conviction for attempted sexual assault where he "reasonably should have known" the victim was asleep, has merit. They also agree that the constitutional error involved is not harmless beyond a reasonable doubt. And they agree that the findings and sentence should be set aside, and a rehearing authorized, in light of *Marin.*

But both parties nevertheless insist the Court accompany them on separate, quixotic adventures.

For its part, the Government concedes that *Marin* is fatal to both Appellant's conviction for attempted sexual assault under Article 80, UCMJ, and his conviction for assault with intent to commit sexual assault under Article 128, UCMJ. We agree.

But the Government insists that we should affirm a conviction for a lesser included offense (LIO), which the Government asserts is assault consummated by a battery.[8] This would require the Court to be the first military appellate court to address the inconsistency between the Government's position and the list of LIOs prescribed by the President under Article 79(b)(2), which—although not exhaustive—states that simple assault is the LIO of assault with intent to commit sexual assault.[9] The Court would then have to determine whether the overt acts alleged in the charged Article 128, UCMJ, attempt-type assault "are drafted in such a manner that"[10] they allege facts that necessarily satisfy all the elements of assault consummated by a battery, which we acknowledge is a possibility.[11]

---

[7] Because *Marin* was decided while Appellant's case was pending direct appeal, he is entitled to the benefit of that decision. *See United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012)(en banc)("[W]here the law is unsettled at the time of trial but settled at the time of appeal, the 'plainness' of the error should be judged by the law at the time of the appeal."); *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008).

[8] Gov't Br. at 36-37.

[9] Manual for Courts-Martial, United States (2019 ed.) [MCM], pt. IV, ¶ 3.b.(3); App. 12A.

[10] *United States v. Armstrong*, 77 M.J. 465, 470 (C.A.A.F. 2018).

[11] *United States v. Riggins*, 75 M.J. 78, 85 n. 7 (C.A.A.F. 2016).

After making quick work of the elements test, and its implications in a case where Appellant was charged in the alternative, the Court would have to decide whether to order a rehearing as to sentence or reassess the sentence pursuant to *United States v. Winckelmann.*[12] As might be expected, the Government anticipates a string of successive victories and asks the Court to conclude its necessarily lengthy, hypothetical opinion by authorizing a—"rehearing and resentencing."[13] In other words, the Government asks the Court to end its opinion where it began—with a rehearing.

The Government does not appear to appreciate the potential perils of its chosen litigation strategy. For example, and without deciding the matter, the Court could in a future case accept the Government's invitation to resolve a case by affirming an LIO, but not the one proposed by the Government. Indeed, the Court might agree with the President's determination that an attempt-type, simple assault is the LIO of assault with intent to commit sexual assault.[14]

The Court would then have to determine whether it should accede to the Government's request to order a rehearing as to the sentence or, pursuant to *Winckelmann*, reassess the sentence. Using this case as an example, Appellant was sentenced by a military judge, and the crime of sexual assault is, unfortunately, the type of offense that the judges of this Court have both the requisite experience and familiarity to reliably determine the sentence that "would have been imposed at trial."[15] We note that Appellant has been confined since 18 August 2022. In a case where the maximum statutorily authorized period of confinement is potentially somewhere between three and six months, should the Court order a rehearing as to the sentence?[16]

Of course, we need not reach that question because Appellant has recently abandoned the position he took at trial that simple assault is the authorized

---

[12] 73 M.J. 11 (C.A.A.F. 2013).

[13] Gov't Br. at 40.

[14] *See* Exec. Order No. 13825, 83 Fed. Reg. 9889 (March 1, 2018).

[15] *Winckelmann*, 73 M.J. at 16.

[16] *Compare* MCM, (2019 ed.), pt. IV, ¶ 77.d.(1)(a) (maximum punishment for simple assault is confinement for three months and forfeiture of two-thirds pay per month for three months) *with*, *id.* at ¶ 77.d.(2)(a) (maximum punishment for assault consummated by a battery is a bad conduct discharge, forfeiture of all pay and allowances, and confinement for six months).

LIO[17] for the charged offense and, without citation to authority, now agrees with the Government that assault consummated by a battery is an LIO.[18]

But all of this is beside the point, according to the Defense, because the Court should address the Defense's *first* assignment of error, which alleges that Appellant received ineffective assistance of counsel at trial.[19] Were the Court to do so, the remedy would be—a rehearing.[20] Further, the Defense agrees with the Government that the Court should delay the resolution of this case and order affidavits from trial defense counsel, as required by *United States v. Melson*,[21] in an effort to achieve—a rehearing.[22] And all of this is to occur while Appellant continues to serve his sentence to three years of confinement.

For that predicament, the Defense proposes a novel solution: a Motion for Expedited Review of Appellant's *second* assignment of error. The Defense makes clear that Appellant is "not seeking expedited review" of his ineffective assistance of counsel claim,[23] but merely Appellant's release from confinement "pending resolution [of that issue]."[24] Put another way, the Defense asks the Court order the rehearing required by *Marin* immediately, and determine later whether his claim of ineffective assistance of counsel merits—another rehearing.

The Government responds that there is no authority for bifurcated appellate review.[25] And for good reason. "A criminal case in the court-martial system moves along a 'time-line' or through a 'tunnel of power' where, depending upon the locus of the case, a particular authority has power over the substance of the case."[26] And the decisions of this Court are not self-executing.[27] That means

---

[17] R. at 786.

[18] Def. Reply at 1.

[19] Def. Reply at 2.

[20] *See, e.g., United States v. Rivas*, 3 M.J. 282, 289 (C.M.A. 1977).

[21] 66 M.J. 346 (C.A.A.F. 2008).

[22] Def. Reply at 12.

[23] Def. Mot. for Exp. Rev. at 2.

[24] *Id.* at 3.

[25] Gov't Opp. to Def. Mot. Exp. Rev. at 2.

[26] *United States v. Diaz*, 40 M.J. 335, 344 (C.A.A.F. 1994) (citation omitted) (cleaned up).

[27] *United States v. Miller*, 47 M.J. 352, 361 (C.A.A.F. 1997).

Appellant would not be entitled to the pretrial confinement hearing he apparently seeks until thirty days after this Court fully resolved Appellant's case.[28]

This case has been hard fought since its inception. And left unchecked, counsel for both sides may yet devise even more elaborate proposals to fully achieve pyrrhic victories on behalf of their clients.[29] That is their prerogative. But the "duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."[30]

The novel issues ably raised by the parties across more than ninety pages of pleadings can be left for another day. Today, we need only hew closely to binding precedent and authorize a rehearing.[31]

## II. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, the findings and sentence are **SET ASIDE**. A rehearing is **AUTHORIZED**.[32]



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[28] *Id.*

[29] "The term 'Pyrrhic victory,' where the battle is won but the war is lost, finds its origins in the ultimately ill-fated war pursuits of King Pyrrhus of Epirus. Pyrrhus is said to have suffered the first Pyrrhic victory around 280 B.C.E. Though he defeated the Romans in two battles, he endured an extremely high number of casualties. As a result, he wound up eventually losing the war." *McKathan v. United States*, 969 F.3d 1213, 1231 n. 7 (11th Cir. 2020) (citation omitted) (cleaned up).

[30] *Mills v. Green*, 159 U.S. 651, 653 (1895).

[31] See *Marin*, 83 M.J. at 634 (authorizing rehearing where members were erroneously instructed as to the requisite mens rea for attempted sexual assault).

[32] Articles 59 & 66, UCMJ.