PUBLISHED OPINION OF THE COURT
SANTORO, Judge:
A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of aggravated sexual assault, one specification of burglary, and one specification of unlawful entry in violation of Articles 120, 129, and 134, UCMJ, 10 U.S.C. §§ 920, 929, 934. The adjudged and approved sentence was a dishonorable discharge, confinement for 10 years, and forfeiture of all pay and allowances.
Upon initial review, Appellant raised two issues for our consideration: (1) whether his right to confrontation was denied when the military judge overruled a defense objection to the testimony of the Government’s DNA expert, and (2) whether the conviction for unlawful entry should be dismissed because the specification failed to allege that his conduct was prejudicial to good order and discipline or service discrediting. We found that the expert improperly repeated testimonial hearsay. We set aside and dismissed the findings of guilt with respect to the specifications alleging aggravated sexual assault and burglary, and authorized a rehearing. We also set aside and dismissed the unlawful entry specification because it failed to state an offense. United States v. Katso, 73 M.J. 630, (A.F. Ct. Crim. App. 2014) (Katso I).
The Judge Advocate General (TJAG) of the Air Force certified the expert witness issue to our superior court, which reversed our decision and remanded to us for further review. United States v. Katso, 74 M.J. 273 (C.A.A.F. 2015) (Katso II). TJAG did not certify, nor did our superior court address, our setting aside and dismissing the unlawful entry specification.
On remand, Appellant raises five assignments of error: (1) the military judge erred by allowing an expert to testify about DNA tests the expert had not personally conducted, (2) the unlawful entry specification failed to state an offense and should be dismissed, (3) the burglary and unlawful entry specifications are facially duplicative, (4) he is entitled to relief for procedural errors relating to his confinement pending appeal, and (5) the military judge’s instruction on proof beyond a reasonable doubt was erroneous.
I. Background
While celebrating her 21st birthday with several friends, Senior Airman (SrA) CA became intoxicated after consuming between 15 and 20 drinks over the course of the evening. At an off-base bar and unable to return to the base on her own, she was assisted back to her room and fell asleep on her bed. SrA CA testified that she woke up when she felt “someone having sex with [her].” She said she was attacked by a man wearing denim pants, glasses, a beanie cap, and a coat. After SrA CA struggled against him, her assailant left, and SrA CA ran into another room and told a Mend she had been raped. SrA CA subsequently identified Appellant as her attacker.
II. Discussion
A. Admissibility of Expert Testimony
Appellant raises no new argument nor does he identify any way in which our superi- or court’s decision did not fully address this assignment of error. Our superior court’s decision in Katso II resolved this issue adversely to him and he is entitled to no relief. Katso, 74 M.J. at 284.
B. Failure to State an Offense
Our prior decision resolved this assignment of error in Appellant’s favor and our superior court did not address or overturn our decision on this point. We decline the Government’s invitation to revisit Katso Fs *706 analysis, and we adhere to the decision setting aside and dismissing this specification.[1]
C. Sentence Reassessment
Having set aside and dismissed the guilty finding on the unlawful entry charge and specification, we must either reassess Appellant’s sentence or remand for a rehearing on sentence. Applying the analysis set forth in United States v. Winckelmann, 73 M.J. 11 (C.A.A.F. 2013); United States v. Buber, 62 M.J. 476 (C.A.A.F. 2006); United States v. Moffeit, 63 M.J. 40 (C.A.A.F. 2006); and United States v. Sales, 22 M.J. 305 (C.M.A. 1986), and carefully considering the entire record and the totality of the circumstances, we are confident that we can reassess the sentence. There has not been a change in the penalty landscape as the military judge merged this offense with the burglary offense for sentencing. All of the evidence admitted in sentencing remained relevant and admissible. Appellant also does not contest the appropriateness of his sentence, We therefore reassess the sentence to that which was adjudged at trial: a dishonorable discharge, confinement for 10 years, and total forfeiture of pay and allowances.
In reassessing Appellant’s sentence, we necessarily have also concluded that the reassessed sentence is appropriate. We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offense, Appellant’s record of service, and all matters contained in the record of trial. United States v. Snelling, 14 M.J. 267, 268 (C.M.A 1982); United States v. Bare, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), aff'd, 65 M.J. 35 (C.A.A.F. 2007). The sentence as reassessed is appropriate for this Airman who invaded a fellow Airman’s dormitory room and violently sexually assaulted her on an Air Force installation.
D. Confinement Pending Appeal
We rendered our initial decision setting aside the findings on 11 April 2014. On 9 June 2014, TJAG filed a certificate of review with our superior court. On 3 June 2016, Appellant requested review of his continued confinement. On 16 June 2016, while this case was still with our superior court, a properly-appointed reviewing officer determined that Appellant should remain in confinement pending the resolution of his appeal. On 30 June 2016, our superior court reversed our decision, effectively reinstating Appellant’s convictions for aggravated sexual assault and burglary.
In Moore v. Akins, 30 M.J. 249 (C.M.A 1990), our superior court faced the exact issue presented in this case: if a service court reverses the conviction of a service-member in confinement, and the case is certified pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), under what circumstances, if any, is the servicemember entitled to be released from confinement? Noting Congress’s desire that “a practical means be made available to release accused service-members from confinement pending appeal in meritorious cases,” our superior court granted Moore’s habeas corpus petition and ordered his release pending completion of appellate review. Moore, 30 M.J. at 263. The court held that a servicemember “must be released from confinement, unless and until the Government shows reasons, such as risk of flight, or obstruction of justice, that warrant keeping him in confinement.” Id. at 249,[2]
Later, in United States v. Miller, 47 M.J. 352 (C.A.A.F. 1997), the Court of Appeals for the Armed Forces (CAAF) reaffirmed Moore:
After considering the matter, if the Judge Advocate General decides to certify a case to this Court, an accused’s interest in the favorable decision of the court below (even if inchoate) requires either that the ac *707 cused be released in accordance with that decision or a hearing on continued confinement be conducted under [Rule for Courts-Martial (R.C.M.) ] 305.
Miller, 47 M.J. at 362. The Miller rule has never been overturned and it has been cited with approval by the CAAF in United States v. Kreutzer, 70 M.J. 444 (C.A.A.F. 2012).[3]
In its attempt to distinguish the instant case from Miller, the Government argues: (1) Miller does not apply because Appellant never became a pretrial detainee; (2) Appellant suffered no prejudice because when a hearing was ultimately held, the reviewing officer ordered his continued confinement; (3) the fact that his convictions were eventually reinstated excuses the failure to comply with Miller, (4) we should infer from our superior court’s disposition without opinion of a similar issue raised in another case that Appellant is entitled to no relief; (5) we should infer from our superior court’s failure to address this claim (which was brought to them only a few days before they issued Katso II) that Appellant is entitled to no relief; and (6) Appellant suffered no prejudice because he will now be released sooner than if he had been released during the pendency of the appeal.
1. Miller’s Applicability
The Government’s initial response is that Miller does not apply to Appellant. Citing Kreutzer, they argue that Appellant remained a “lawfully confined post-trial prisoner” with an approved sentence to confinement throughout the duration of our superior court’s review and that, therefore, Miller is inapposite. We disagree.
Kreutzer was convicted of premeditated murder and sentenced to death. The Army Court of Criminal Appeals set aside the sentence to death but affirmed guilty findings with respect to several charges and specifications, including murder while engaged in an inherently dangerous act. Facing nearly the same claim as Appellant makes in the instant case, our superior court in Kreutzer held that Millef s requirement did not apply because Kreutzer remained an adjudged prisoner throughout the duration of his appeal. Id.
Miller was convicted of pandering, obstruction of justice, showing pornography to minors, battery, attempted indecent assault, and providing alcohol to minors. The adjudged sentence included confinement for 10 years. On appeal to this court, we set aside several findings of guilt and affirmed others, but reassessed the sentence to reduce the confinement to four years. Based on the reassessed sentence, officials at the United States Disciplinary Barracks set Miller’s minimum -release date for the following day—before TJAG decided whether to certify the case for review. Miller, 47 M.J. 352.
Kreutzer and Miller are not inconsistent. In Kreutzer, several guilty findings had been affirmed and the appellant was pending a rehearing on sentence[4] (as well as a rehearing on the set-aside findings). In Miller, the reassessed sentence meant that Miller had served his entire sentence and was entitled to immediate release from confinement. Therefore, Miller’s interest in the favorable service-court decision was clear: if affirmed, he faced no further liability for his offenses.
In the instant case, where our initial decision nullified Appellant’s criminal liability, his ease is more closely aligned with Miller (and Moore) in that our decision, if affirmed, would require his immediate release from confinement unless there was a proper determination to hold him for a rehearing. We therefore hold that the Government was obligated to comply with Miller.
2. Miller’s Requirements and Remedies
Miller did not, however, specifically identify which of R.C.M. 305’s procedures were to *708 be followed. Nor did the CAAF identify the remedy, if any, for non-compliance.
R.C.M. 306 (entitled “Pretrial confinement”) establishes both procedural requirements and remedies for non-compliance. Procedurally, the rule requires that within 72 horn’s of a commander’s ordering a prisoner into “pretrial confinement,” the commander must determine whether confinement should continue. R.C.M. 306(h)(2)(A). Within 48 hours of entry into confinement, a neutral and detached officer must review the adequacy of the probable cause to continue pretrial confihement. R.C.M. 305(i)(l). Within 7 days of the imposition of confinement, a neutral and detached officer must review both the probable cause determination and the necessity for continued confinement. R.C.M. 305(i)(2). The remedy for failure to comply with these procedural rules “shall be an administrative credit against the sentence adjudged for any confinement served as the result of such noncompliance. Such credit shall be computed at the rate of 1 day credit for each day of confinement served as a result of such noncompliance.” R.C.M. 305(k).
One could argue that the CAAF’s intent in Miller was simply to require that a neutral and detached officer hold a hearing to determine whether continued confinement was appropriate and, because no Rule for Courts-Martial set forth such a procedure, the reference to R.C.M. 306 was nothing more than a suggestion about how such a hearing might be conducted. Conversely, one could also argue that Miller requires the Government to comply with all of R.C.M. 305’s procedural protections and that failure to do so will trigger R.C.M. 305(k)’s one-for-one credit requirement.
We must first therefore resolve the question of what process Miller requires before we can determine whether Appellant received the process due and, if not, the scope of any remedy. This appears to be a case of first impression.
We easily conclude that Miller did not contemplate that R.C.M. 306 would be followed in its entirety. First, Miller said that the detainee would be entitled to “a hearing” conducted under R.C.M. 305 (emphasis added). Had our superior court intended that Appellant receive a 72-hour review, a 48-hour review, and a 7-day review, we doubt they would have referred to a singular hearing, especially since R.C.M. 305 does not refer to a “hearing.” See R.C.M. 305.
Second, two of the three findings a reviewing officer must make to justify continued confinement under R.C.M. 305 are that an offense triable by court-martial was committed and that the prisoner committed it. R.C.M. 305 (h)(2)(B). In Katso I, although we set aside the findings, we authorized a rehearing. We necessarily implicitly determined that notwithstanding our decision, probable cause existed to believe Appellant committed an offense triable by court-martial.[5] We doubt that our superior court intended to give a reviewing officer the authority to overturn that decision.
We therefore conclude that the review Miller requires is one to determine “continued confinement”—that is, whether confinement on appeal is necessary because it is foreseeable that the prisoner will not appear at trial (or pretrial hearings) or that the prisoner will engage in serious criminal misconduct and, if either of those two conditions is met, that less severe forms of restraint are inadequate. See R.C.M. 305(h)(2)(B). This is also consistent with Moore’s holding that a detainee in such a situation must be released unless the Government establishes “reasons ... that warrant keeping him in confinement,” Moore, 30 M.J. at 249, without making reference to the need to establish probable cause that the detainee committed an offense triable by court-martial.
Next we must determine when the Miller review is to occur. The CAAF established the initial trigger: the date on which TJAG certifies a service court decision is the date on which an appellant obtains an interest in the favorable lower-court decision requiring either release or a hearing. Miller, 47 M.J. at 362. We also know that the President determined 7 days from imposition of confinement is the outer limit by which confinement review must occur. We are, therefore, left with *709 two possible windows: within 48 hours of certification[6] or 7 days of certification.[7] We believe that in the context of a Miller review, 7 days is the appropriate window during which the hearing must be held.
The Government does not dispute that Appellant’s Miller review was not conducted until 15 June 2015, 372 days after TJAG certified this case to our superior court. Appellant requests that we grant 365 days of credit for illegal confinement or alternatively use our Article 66(c), UCMJ, authority to reduce the period of confinement by the same period.[8]
As noted above, Miller does not explicitly set forth the remedy for noncompliance. We reject any argument that there can be no remedy for. a Miller violation, for “[i]t is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 153, 2 L.Ed. 60 (1803).
Because Miller could not have intended for each aspect of R.C.M. 305 to control the continued confinement review, we are also not convinced that R.C.M. 305(k) must be the source of the remedy. We do believe, however, that the President’s determination that confinement without following established procedural protections merits day-for-day administrative credit applies equally to Miller violations as it does to pre-trial confinement review violations.[9]
Therefore, we hold that the remedy for the Government's failure to provide a Miller review within seven days of certification is day-for-day administrative credit (beginning on the eighth day) against the sentence as finally affirmed, and if the affirmed sentence does not include confinement sufficient to offset all the credit to which the appellant is entitled, the credit shall be applied against hard labor ■without confinement, restriction, fine, and forfeiture of pay, in that order, using the conversion formula under R.C.M. 1003(b)(6) and (7). The credit shall not be applied against any other form of punishment.[10]
While we understand the Chief Judge’s dubitante opinion and belief that R.C.M. 305 does not apply to this case, as an inferior court we are not at liberty to craft a rule contrary to that clearly articulated by our superior court. Were we writing on a blank slate we may well have reached a different result. But we are not. We are bound to follow and apply precedent as we understand it. We cannot ignore or fail to implement our superior court’s declaration that R.C.M. 305 does apply to Appellant, at least in some respect. Our decision today attempts to reconcile Miller, the interests the Miller rule appears designed to protect, and the Rules for Courts-Martial.
The Government’s remaining arguments merit little discussion. There is no requirement that a detainee complain about the propriety of - confinement, exhaust administrative remedies, or establish prejudice before R.C.M. 305(k) credit is due and we do not believe a different rule was intended to apply to Miller reviews. While not stated explicitly- in the Rule, the reason Appellant need not raise those issues is likely because the President, in promulgating the Rules, *710 recognized that incarceration without due process is inherently prejudicial.[11]
We therefore grant Appellant the relief to which he is entitled: he shall be credited with 366 days of administrative credit against the reassessed sentence to confinement.
E. Findings Instruction
Appellant asserts for the first time on remand that the military judge’s instruction on the burden of proof beyond a reasonable doubt was error.[12] The military judge, instructed the members that if, based on their consideration of the evidence, they were firmly convinced of Appellant’s guilt, that they must find him guilty, Appellant did not object to the instruction at ‘trial but now argues that it violates Supreme Court precedent prohibiting a trial judge from “directing the jury to come forward with [a guilty verdict], regardless of how overwhelmingly the evidence may point in that direction.” United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (citation omitted). However, the CAAF recently rejected this argument under these circumstances. See United States v. McClour, 76 M.J. 23 (C.A.A.F. 2017). Accordingly, the military judge did not commit plain error in his reasonable doubt instruction.
III. Conclusion
The findings of guilt as to Charges I and II and them specifications are AFFIRMED. The findings of guilt as to Charge III and its specification are set aside and the charge and specification are DISMISSED WITH PREJUDICE. The sentence, as reassessed, is AFFIRMED. Appellant shall be credited with 365 days of administrative credit against his sentence to confinement.

, Our setting aside and dismissing this charge and specification moots Appellant's third assignment of error.

. In response, Congress enacted Article 57a(c), UCMJ, 10 U.S.C. § 857a(c), which provides that when a sentence to confinement has been ordered executed by the convening authority but the case is pending review under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2), "the Secretary concerned may defer further service of sentence to confinement while that review is pending." The grant of this discretionary authority to the Secretary did not abrogate or alter our superior court’s holding in Moore.

. When Miller was decided, The Judge Advocates General had a 30-day period to decide whether to certify a case to our superior court, United States v. Miller, 47 M.J. 352, 361 (C.A.A.F. 1997). Although the 30-day certification decision period has since been expanded to 60 days, wo agree with our Navy-Marine Corps colleagues that the Miller requirement, i.e„ confinement review upon certification, remains in effect. Clark v. United States, 74 M.J. 826, 829 fn.2 (N-M. Ct. Crim. App. 2015) (unpub. op.).

. Our superior court referred to Kreutzer's status as having a "temporarily inchoate sentence” which was ultimately adjudged to include confinement for life.

. See Rule for Courts-Martial (R.C.M.) 601(d)(1).

. See Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (holding that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest); see also Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (vacating court of appeals’ judgment and concluding county was entitled to combine probable cause determinations with arraignments if conducted within 48 hour of an individual’s arrest).

. R.C.M. 305(i)(2).

. Although not explicitly stated, Appellant's request for 365 days of credit suggests that he, too, does not believe that all of R.C.M. 305's procedural requirements apply to Miller reviews and that non-compliance began after 7 days without a Miller review.

. The Chief Judge's dubitante opinion suggests that the remedy for a Miller review violation should be based on equity rather than the day-for-day credit set forth in R.C.M. 305(k). As neither he nor the CAAF have set forth the criteria we could or should use in such a situation, we believe we are bound to follow the policy determination contained within the Rules for Courts-Martial for the remedy for the failure to receive a confinement review hearing. R.C.M. 305(k).

. See R.C.M. 305(k).

. We summarily reject the Government's remaining three arguments. That Appellant will ultimately be released sooner than had he been released pending appeal does not change the fact that his right to Miller's procedural protections does not depend upon the outcome of the appeal. Our superior court's denial (without opinion) of a writ of habeas corpus in an unrelated case is irrelevant to the outcome of this case. See Fetrow v. Cotton, 75 M.J. 405, 406 (C.A.A.F. 2016). Similarly, we do not accept the Government's invitation not to grant Appellant the relief to which he is entitled because our superior court remanded the case without addressing the confinement issue.

. The Government does not challenge our consideration of this issue despite its not being raised during the initial submission of errors.