# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

**UNITED STATES**
Appellee

**v.**

**R. Bronson WATKINS, Staff Sergeant**
United States Marine Corps, Appellant

**No. 19-0376**

Crim. App. No. 201700246

Argued June 4, 2020—Decided September 2, 2020

Military Judge: Mark D. Sameit and Matthew J. Kent

For Appellant: *Lieutenant Daniel E. Rosinski*, JAGC, USN (argued); *Clifton E. Morgan III*, JAGC, USN.

For Appellee: *Lieutenant Commander Timothy C. Ceder*, JAGC, USN (argued)*; Lieutenant Colonel Nicholas Gannon,* USMC, *Lieutenant Joshua Fiveson*, JAGC, USN, and *Brian K. Keller,* Esq. (on brief); *Colonel Mark K. Jamison*, USMC.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, Judge OHLSON, and Senior Judge RYAN, joined. Judge MAGGS filed a separate dissenting opinion.

Judge SPARKS delivered the opinion of the Court.

A general court-martial convicted Appellant, contrary to his pleas, of two specifications of failure to obey a lawful order and one specification each of sexual abuse of a child and obstruction of justice, in violation of Articles 92, 120b, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920b, 934 (2012). Appellant was sentenced to confinement for five years, a dishonorable discharge, and reduction to grade E-1. The convening authority approved the sentence as adjudged. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. *United States v. Watkins*, No. NMCCA 201700246, 2019 CCA LEXIS 71, at

*48–49, 2019 WL 937192, at *17 (N-M. Ct. Crim. App. Feb. 21, 2019) (unpublished).[1]

We granted review of three issues:

I. A conflict of interest exists where the interests of an attorney and defendant diverge on a material factual or legal issue, or a course of action. Threats by regional trial counsel [RTC] and a regional trial investigator towards civilian defense counsel created a conflict of interest between civilian counsel and Appellant. Did the military judge err in denying civilian counsel's motion to withdraw?

II. The Sixth Amendment guarantees an accused the right to retain counsel of his own choosing. Before trial, and after his civilian counsel moved to withdraw—citing a perceived conflict of interest—Appellant asked to release his civilian counsel and hire a different counsel. Did the military judge err by denying this request?

III. Did the lower court err in ratifying the military judge's denial of Appellant's request for conflict-free counsel, where it: (A) found the request was in "bad faith," based on alleged misbehavior by Appellant occurring before the RTC's unexpected threats; and, (B) treated the military judge's finding that Appellant's request for counsel was "opportunistic," as a finding of fact instead of a conclusion of law?

We hold that Appellant was denied his right to counsel of his choice and we reverse.[2]

---

[1] We note that the Court of Criminal Appeals agreed with the parties that there was an error in the convening authority's action and, accordingly, directed that the "supplemental promulgating order shall reflect that the members acquitted the appellant of the language 'influence the testimony of [C].'" 2019 CCA LEXIS 71, at *29, 2019 WL 937192, at *17. Following its taking of this corrective action, the Court of Criminal Appeals found "that no error materially prejudicial to the substantial rights of the appellant remain[ed]." *Id.*, 2019 WL 93712, at *17.

[2] Having decided this case on Issue II, it is unnecessary to address Issues I and III.

## I. Background[3]

Appellant was charged with sexually abusing his nine-year-old daughter, C, by touching her breasts and vaginal area with his hands and penetrating C's vulva with his fingers. He was arraigned on July 1, 2016. During the period leading up to the trial, Appellant's daughter recanted her allegations. Afterwards, the Government began experiencing difficulties in locating and serving subpoenas on Appellant's wife and daughter.

At an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session held on what was to have been the first day of trial, September 12, 2016, the Government detailed the numerous problems it had encountered in its attempts to locate the wife and daughter. Significantly, the Government's investigator testified, among other things, that he obtained the family's bank records and found that Appellant's wife had recently used a debit card to make a purchase at a San Diego bookstore. This purchase was significant to the investigator because the bookstore was "next door" to civilian defense counsel's office and the purchase had taken place on a day when the investigator believed that Appellant had gone to meet with civilian counsel at the office.

By the time of the hearing Appellant had retained Mr. Bruce White as civilian counsel. In light of the investigator's testimony at the hearing, Mr. White apparently took exception to the insinuation, at least from his perspective, that somehow he was complicit in assisting Appellant and his wife in avoiding service of process. In his statement for the record to the military judge he pointed out that he had only met Appellant's wife one time and that meeting had taken place at her base residence.

At a later Article 39(a), UCMJ, session, the Government returned to the subject of the proximity of the bookstore in San Diego to Mr. White's law office. The military judge ruled that the fact that Appellant's wife had been in a bookstore

---

[3] This part of our opinion relies substantially on the very detailed and helpful recitation of the case background in the lower court's opinion.

near Mr. White's office was not relevant. Nonetheless, the Government persisted insisting that it was relevant because, "it is where the accused could have potentially met with [his wife]." The military judge, however, maintained his ruling.

After the military judge ruled, the regional trial counsel for Camp Pendleton, Lieutenant Colonel (LtCol) Keane, who was sitting behind the bar, directed trial counsel to ask for a recess. When the military judge recessed the court, LtCol Keane became engaged in an argument with civilian defense counsel. Mr. White insisted that he had not been at his office the day Appellant's wife had been at the bookstore. LtCol Keane told Mr. White, in a raised voice, that he didn't care and "it's not over" or words to that effect. LtCol Keane testified further that he told Mr. White "something along the lines of" Mr. White was "being shady." This incident occurred on a Thursday and the court-martial was not scheduled to reconvene until the following Monday. On Sunday, Mr. White sent an email to the military judge informing him that he had doubts about his ability to represent Appellant. He wrote, "the Government's improper actions combined with LtCol Keane's threat toward me have placed me in a conflict position . . . . I discussed this generally with SSgt Watkins today so that you can conduct a proper inquiry into this issue tomorrow." Mr. White added that if he must withdraw, or if Appellant released him, "I plan to refund SSgt Watkins' entire fee so that he can quickly retain conflict free counsel."

The following day, Monday, Mr. White moved to withdraw. He stated that the Government suspected him of wrongdoing, and that he therefore had an interest that was directly adverse to Appellant. He referenced LtCol Keane's "very loud" assertion that "[t]his isn't over. Which in this business, can only mean one thing . . . . I will be the next guy that they are coming after." The military judge asked if Mr. White understood this to mean that he thought that LtCol Keane intended to pursue a bar complaint, an ethical complaint, or some other type of action against him, and whether that would shape the way in which he conducted the defense. Mr. White answered, "[y]es Your Honor." Mr. White stated that he had "been virtually treated like a co-conspirator." Mr. White further complained that, in his view,

the Government had repeatedly raised instances that insinuated he had been involved in the obstruction allegation. He stated, "I have gotten to the point now that . . . I think I have a direct conflict."

After a recess, the military judge called LtCol Keane as a witness on the motion to withdraw. He asked him what he meant when he told Mr. White that it "wasn't over." LtCol Keane testified he was referring to "where the last credit card transaction for the wife of the accused was . . . which was at a strip mall next to his office at the same time . . . the accused was supposedly visiting, and shortly thereafter, she fled the area and tried to hide from the service of process." LtCol Keane testified that he was neither pursuing nor contemplating reporting Mr. White to the state bar or initiating any action against him. Furthermore, he was unaware of any part of the Government pursuing or contemplating reporting Mr. White to the state bar. The military judge's questioning proceeded as follows:

> Q. Lieutenant Colonel Keane, after a session of court last week, did you say something to Mr. White to the effect of, "This ain't over"?
>
> A. Yes.
>
> Q. Do you recall specifically what you said?
>
> A. It was after he—as I was leaving the courtroom, he said to me twice, "I wasn't at my office that day." I said, "I don't care." He said, "I know you don't care." And I said, "This—it's not over," or something along the lines of that, or something along the lines of "being shady."
>
> Q. Okay. So can you flesh out what you meant when you said, "This ain't over"?
>
> A. Well, "This ain't over" was the issue of where the last credit card transaction for the wife of the accused was taken place [sic], which was at a strip mall next to his office at the same time contemporaneously when the accused was supposedly visiting; and shortly thereafter, she fled the area and tried to hide from the service of process.

Q. To your knowledge—well, do you believe Mr.
White was complicit in any of the misconduct
described on the charge sheet in this case?

A. I have no evidence that he was complicit.

Q. Do you believe he has otherwise engaged in mis-
conduct?

A. I have no evidence that he did.

Q. Do you believe he has otherwise engaged in un-
ethical behavior in this case?

A. I have no evidence to support that—I'm not
aware of any evidence.

Q. Is—are you currently pursuing or contemplating
any effort to report Mr. White to either of the
state bars of which he is a member?

A. No.

Q. Are you currently pursuing or otherwise con-
templating initiating or otherwise pursuing
criminal action against Mr. White?

A. No.

Q. To your knowledge, does any part of the gov-
ernment currently contemplate pursuing report-
ing Mr. White to either of the state bars of which
he is a member?

A. I'm not aware of any.

The military judge asked similar questions of the case
agent. The agent testified that she was unaware of any cur-
rent or planned investigation into Mr. White for obstruction
of justice.

The military judge asked Appellant who he wanted to
represent him. Appellant said that he wanted to be repre-
sented by his two detailed counsel and "another attorney
that I would like to bring onboard." The military judge
pointed out that Appellant had hired Mr. White and asked
him if he had been satisfied with the services. Appellant an-
swered that he had been, "[f]or the most part." The military
judge asked Appellant why he did not want Mr. White to
represent him. Appellant stated that he first thought about

the possibility that Mr. White might be conflicted when the Government investigator brought up the fact that Appellant's wife had visited the bookstore next to Mr. White's office. He thought that Mr. White "became, in my opinion kind of emotional . . . the focus was no longer on me in particular at that time, and it was more on trying to clear his name. So that made me very uncomfortable." Then, "when Lieutenant Colonel Keane made his—what I would consider a threat, I guess, against . . . Mr. White, that just—for me, it solidified the fact that it was about Mr. White as much as it was about me." The military judge asked Appellant if he was able to effectively communicate with Mr. White. Appellant replied no, because his communications were "overshadowed about . . . how much priority of him [sic] trying to keep his name clear . . . . I can't sit here . . . thinking he could have done something else, but he's not going to do it because . . . of a threat from the government."

The military judge denied Mr. White's motion to withdraw. He found that no evidence tended to prove that Mr. White was complicit in any charged misconduct, and that neither LtCol Keane nor NCIS intended to take any action against Mr. White. The military judge stated for the record that he had observed Appellant and Mr. White communicating cooperatively. The military judge also considered the difficulties that the Government had incurred in securing the presence of Appellant's wife and daughter. These difficulties, in his view, had delayed the trial for several months. In his findings he also relied on evidence that Appellant had searched the Internet for information on avoiding subpoenas, extradition agreements and other matters suggesting that he did not want his family to testify. He also relied on the wife's significant ties to Uganda and was not convinced that Appellant's wife and daughter would be available for trial. Relying on the totality of the circumstances the military judge found that the justifications for Mr. White's withdrawal and Appellant's decision to hire a different attorney were not supported by facts on the record. He ultimately concluded that any arguments in favor of excusing Mr. White were "opportunistic."

## II. Discussion

Appellant argues that the military judge abused his discretion by not allowing him to dismiss his civilian counsel. Appellant asserts that it was reasonable for him to decide he should release civilian counsel after witnessing the Government attack his civilian counsel, and observing trial counsel persistently raise the implication that civilian defense counsel was in some way complicit with an obstruction allegation against Appellant. We agree.

The Sixth Amendment guarantees the right to counsel, and within that, the right to choice of counsel for those who hire their own counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). "It commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146. Despite adequate representation by counsel, if it is not the accused's counsel of choice and if he is erroneously prevented from being represented by the lawyer he wants, then the right has been violated. *Id.* at 148. As a result, the violation of the right to choice of counsel is not subject to harmless error analysis. *Id.* at 150. "[E]rroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)). Harmless error analysis under such circumstances would be a "speculative inquiry into what might have occurred in an alternate universe." *Id.* To compare two attorneys, one whose services were denied, would require a court to speculate upon what different choices or different intangibles might have been between the two. *Id.* at 151.

"Congress has provided members of the armed forces facing trial by general or special court-martial with counsel rights broader than those available to their civilian counterparts." *United States v. Spriggs*, 52 M.J. 235, 237 (C.A.A.F. 2000). An accused has the right to detailed military counsel, military counsel of choice if reasonably available and, at his own expense, civilian counsel of choice. Article 38(b), UCMJ, 10 U.S.C. § 838(b) (2012). Appellant's right to civilian counsel of choice is further protected under Rule for Courts-Martial (R.C.M.) 506(c) (2016 ed.), which states that

"[d]efense counsel may be excused only with the express consent of the accused, or by the military judge upon application for withdrawal by the defense counsel for good cause shown."[4] Nevertheless, this right to civilian counsel of choice "is not absolute and must be balanced against society's interest in the efficient and expeditious administration of justice." *United States v. Thomas*, 22 M.J. 57, 59 (C.M.A. 1986) (citation omitted). A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez,* 548 U.S. at 152 (citing *Wheat v. United States*, 486 U.S. 153, 163–64 (1988); *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)).

When an accused seeks to excuse and replace civilian counsel, he also may implicitly be seeking a continuance in order to procure replacement counsel. *Cf. United States v. Turner*, 897 F.3d 1084, 1101 (9th Cir. 2018) (noting the potential relationship between a request for continuance and a motion to substitute counsel). A military judge should require the accused to explicitly address this issue on the record. When an accused's request to release and replace counsel could create the need for a continuance, the factors announced in *United States v. Miller*, 47 M.J. 352, 358 (C.A.A.F. 1997), can guide the trial court in balancing the accused's fundamental right to counsel of choice, the "efficient and expeditious administration of justice," *Thomas*, 22 M.J. at 59, and the demands of the court's calendar. *Gonzalez-Lopez*, 548 U.S. at 152. Principal among these in situations such as this are timing considerations—namely, whether an accused's request to release counsel requires a continuance and, if so, what the length of such a continuance might be.[5] Other factors include surprise, nature of any

---

[4] Further, the Navy's Rules of Professional Conduct are clear that "[a] client has a right to discharge a covered attorney at any time, with or without cause." Dep't of the Navy, Instr. 5803.1E, Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General Rule 1.16 cmt. 3(a) (Jan. 20, 2015).

[5] The actual need for a continuance is less likely in the military justice system than in the civilian justice system. At court-

evidence involved, timeliness of the request, substitute testimony or evidence, availability of witnesses or evidence requested, prejudice to the opponent, whether the moving party has received prior continuances, good faith of the moving party, use of reasonable diligence by the moving party, possible impact on the verdict, and prior notice. *Miller*, 47 M.J. at 358.

We review the military judge's resolution of this issue for an abuse of discretion. *United States v. Wiest*, 59 M.J. 276, 279 (C.A.A.F. 2004); *Miller*, 47 M.J. at 358; *Thomas*, 22 M.J. at 59. The military judge's ruling appeared to rest upon two basic conclusions: (1) his in-court observations of Appellant effectively communicating with his counsel, and (2) his belief that Appellant's request to excuse Mr. White was an implicit request for a continuance, and that this request was "opportunistic" and an obvious attempt to impede the prosecution given the evidence of Appellant's attempts to prevent his wife and daughter from appearing for trial. Even if this were true, the military judge did not balance the factors mentioned in *Miller*. In other words, he did not use them to balance the accused's right to choice of counsel against the demands of the court's calendar and the concerns of fairness and efficiency. *Cf. Gonzalez-Lopez*, 548 U.S. at 152; *Thomas*, 22 M.J. at 59.

The military judge seemed, for good reason, to be concerned that the wife and daughter might not be available for trial. Any frustration on the part of the military judge and the Government was understandable. However, there was no inquiry as to whether or not other means to preserve their testimony might have been feasible, such as depositions under R.C.M. 702. Likewise, as for how long it might have taken Appellant to retain new counsel, the military judge never put this question to him.

---

martial, an accused who has hired a civilian defense counsel often still receives representation from an assigned military defense counsel who should be prepared to proceed to trial in a timely manner. In this circumstance, an accused's right to counsel under the Sixth Amendment or Article 38, UCMJ, would likely not be violated.

All of this together demonstrates that the military judge failed to make the findings necessary to properly balance Appellant's right to counsel of his choice against the considerations alluded to in *Thomas*, 22 M.J. at 59, and the demands of the court's calendar, *Gonzalez-Lopez*, 548 U.S. at 152. More is needed before an accused can be deprived of this fundamental right.

### Conclusion

The military judge erred by neither considering nor conducting the proper balance of Appellant's right to choice of counsel against other important considerations. The consequence is an abuse of discretion. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to an appropriate convening authority. A rehearing may be authorized.

Judge MAGGS, dissenting.

The military judge did not abuse his discretion when he denied civilian defense counsel's application to withdraw. The military judge also did not abuse his discretion when he declined to grant a continuance so that Appellant could substitute civilian defense counsel. Accordingly, I would answer the assigned issues in the negative and would affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA). I therefore respectfully dissent.

## I. Assigned Issues II and III

I address assigned Issues II and III first.[1] Appellant contends that the military judge erred in denying his motion to hire substitute civilian defense counsel because the Sixth Amendment guarantees the accused the right to counsel of his choice. I disagree. The military judge properly recognized that while an accused has the right to choose his counsel, "the accused's ability to do so may be circumscribed . . . if the accused is simply using the opportunity to impede the investigation or trial of the charges." The military judge's findings of fact establish that is what happened here.

---

[1] Assigned Issue II is:

> The Sixth Amendment guarantees an accused the right to retain counsel of his own choosing. Before trial, and after his civilian counsel moved to withdraw—citing a perceived conflict of interest—Appellant asked to release his civilian counsel and hire a different counsel. Did the military judge err by denying this request?

Assigned Issue III is closely related:

> Did the lower court err in ratifying the military judge's denial of Appellant's request for conflict-free counsel, where it: (a) found the request was in "bad faith," based on alleged misbehavior by Appellant occurring before the [regional trial counsel's] unexpected threats; and, (b) treated the military judge's finding that Appellant's request for counsel was "opportunistic," as a finding of fact instead of a conclusion of law?

## A. Background

On the first day scheduled for the trial, in accordance with Rule for Courts-Martial (R.C.M.) 901(d)(4)(E), the military judge asked Appellant to identify the counsel by whom he wished to be represented. Appellant answered that he wanted to be represented by his two detailed military defense counsel, and added "and I have another attorney that I would like to bring onboard." The military judge responded that Appellant had previously hired Mr. Bruce White to serve as his civilian defense counsel and asked Appellant whether he "wish[ed] to continue to retain the services of Mr. White." Appellant said that it was not his wish to do so.

Trial counsel responded by recognizing that Appellant has a right to counsel of his choice but expressed concern about delaying the trial. Trial counsel said:

> If [Appellant] wishes to discharge his retained civilian counsel, that is obviously within his right. However, the government is prepared to begin trial tomorrow with members and presentation of evidence; and simply because the accused has a desire to no longer utilize the services of Mr. White does not change that. The government has gone to great extents and lengths and expense to make all of the arrangements necessary to begin trial.

The military judge then asked counsel for both sides if they would like an opportunity to research and brief the issue of severing Mr. White. Trial counsel answered:

> Your Honor, the government's interest in that regard is maintaining the current trial dates. So only if—and I don't even know if that relief is being requested—if any type of continuance or leave to pursue another civilian counsel has been requested. So in that regard, the government is interested in researching and briefing the issue only if our current trial dates are in jeopardy.

Trial counsel's statements show there was no dispute that Appellant had a right to discharge Mr. White or to hire another civilian defense counsel if he so desired. The disagreement instead was about whether the military judge should grant a continuance to allow Appellant to find a different attorney.

The military judge saw insufficient grounds for granting a continuance and therefore denied Appellant's motion. The military judge explained:

> The history of this case involves several continuances; and with the accused being released from pretrial confinement and then being placed back in pretrial confinement months later. The history of this case entails significant difficulty in securing the presence of [witnesses] Mrs. Salome Watkins and C.K.W.

> In considering the totality of the circumstances, I consider those difficulties in the context of the Google searches on the accused's phone regarding obstruction of justice, avoiding subpoenas, and the status of the extradition agreements of various countries, particularly, in light of Mrs. Watkins' status as an immigrant who still has significant international family ties. The Court is not convinced these witnesses will be available if this case were to be continued.

In addition to these concerns, the military judge also found that Appellant's request to replace Mr. White with new counsel was an insincere ploy made for the purpose of delaying the trial. In his written findings of fact, the military judge stated: "[T]he court finds that the accused's attempt to terminate his representation by Mr. White on the morning of the first day of a trial evidences an obvious attempt to further impede the prosecution of the case against him." The military judge further found:

> While the accused has today, on the eve of trial, expressed a preference to hire a new civilian counsel and while Mr. White has expressed a preference for being released, the justification they offered [is] not supported by the facts on the record. The Court has found there is no actual conflict between Mr. White and the government or Mr. White and his client, nor do they show an irreconcilable conflict or breakdown in communication between the accused and his civilian counsel.

> On the contrary, the arguments in support of excusing Mr. White on these facts strike the Court as opportunistic.

Emphasis added.

B. Discussion

This Court held in *United States v. Montoya* that the accused has an "unfettered choice to select a civilian counsel at any time during the trial" but that "the exercise of that right cannot operate to unreasonably delay the progress of the trial." 13 M.J. 268, 274 (C.M.A. 1982). In other words, "[a]n accused can always discharge his attorney, but if he desires to substitute another attorney for the one discharged, his right is qualified in 'that the request for substitution of counsel cannot impede or unreasonably delay the proceedings.'" *Id.* (quoting *United States v. Jordan*, 22 C.M.A. 164, 167, 46 C.M.R. 164, 167 (1973)). Without such a limitation on the right to select counsel, the accused could delay a trial indefinitely by repeatedly requesting continuances to seek different attorneys. Applying the holding of *Montoya* to this case, the question before this Court is not whether Appellant had a right to substitute attorneys (that is, to release Mr. White and to hire a different counsel), but instead whether the military judge abused his discretion in denying a continuance.

In *United States v. Miller*, this Court identified a number of factors relevant in determining whether a military judge abused his or her discretion by denying a continuance to allow an accused a reasonable opportunity to obtain civilian counsel. 47 M.J. 352, 358 (C.A.A.F. 1997). These factors include:

> surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.

*Id.* (quoting F. Gilligan & F. Lederer, *Court–Martial Procedure* § 18–32.00, at 704 (1991) (footnotes omitted)).

I agree with the NMCCA's extensive and careful analysis of these factors, and its decision that the military judge did not abuse his discretion. *United States v. Watkins*, No. NMCCA 201700246, 2019 CCA LEXIS 71, at *24–32, 2019 WL 937192, *9–10 (N-M. Ct. Crim. App. Feb. 21, 2019). I especially approve of the NMCCA's view that the most signifi-

cant *Miller* factor in this case was Appellant's lack of good faith. *Id.* at \*32, 2019 WL 937192, at \*11. As described above, the military judge found that Appellant's request to substitute counsel was "opportunistic," meaning that Appellant did not make the request in good faith. I believe the NMCCA properly treated this determination as a finding of fact. *See United States v. Palmer*, 59 M.J. 362, 365 (C.A.A.F. 2004) (subjecting a hearing officer's finding that the accused did not act in good faith to clear error review); *United States v. Mitchell*, 777 F.2d 248, 257 (5th Cir. 1985) (treating a district court's conclusion that a continuance for the purpose of hiring counsel was requested "in bad faith and for the purpose of delay" as a finding of fact). This Court is bound by this finding of fact unless it is clearly erroneous. *Palmer*, 59 M.J. at 365. Here, I agree with the NMCCA that the military judge's finding of fact on this point was not clearly erroneous. I therefore would answer assigned Issue III in the negative.

In my view, once the military judge determined that Appellant's request was not made in good faith, little further inquiry into whether to grant a continuance was required. The military judge could choose not to address other *Miller* factors, including the possible length of a continuance or the demands of the court's calendar in denying a continuance, on grounds that no length of continuance is warranted for a request made in bad faith. This Court did not hold in *Miller* that a military judge must consider and expressly weigh each of the listed factors. Such a requirement would be highly burdensome, often unnecessary, and inconsistent with other precedent. *See, e.g., United States v. Kinard*, 21 C.M.A. 300, 306, 45 C.M.R. 74, 80 (1972) (holding that the military judge did not abuse his discretion in not granting a continuance for hiring new counsel based on a few key factors, namely, "appellant's precipitate and frequent discharge of appointed counsel, his refusal to accept assistance in obtaining civilian counsel, and his inability to relate some time limit for the continuance"). The military judge's finding with respect to good faith, his concerns about the availability of witnesses (even if these concerns might have been mitigated), and the record of prior continuances provided an ample basis for the military judge's decision,

from which it follows that he did not abuse his discretion in denying the continuance. I therefore would resolve assigned Issue II in the negative.

**II. Civilian Defense Counsel's Motion to Withdraw**

Addressing assigned Issue I,[2] Appellant argues that threats by the regional trial counsel and a regional trial investigator towards Mr. White created a conflict of interest. Appellant further contends that, in the light of this conflict of interest, the military judge erred in denying Mr. White's request to withdraw. I disagree.

R.C.M. 506(c) provides, in relevant part, that "defense counsel may be excused only with the express consent of the accused, or by the military judge upon application for withdrawal by the defense counsel for good cause shown." In my view, the military judge did not abuse his discretion in denying Mr. White's application to withdraw under this rule because Mr. White did not contend that the Appellant had expressly consented to his withdrawal and because Mr. White did not show good cause for withdrawal.

A. Express Consent

The NMCCA concluded that the military judge erred in not allowing Mr. White to withdraw under R.C.M. 506(c) because Mr. White had Appellant's "express consent" to withdraw. *Watkins*, 2019 CCA LEXIS 71, at *19, 2019 WL 937192, at *6. The NMCCA further asserted that the Government had conceded that not allowing Mr. White to withdraw on this ground was error. *Id.* at *19, 2019 WL 937192, at *6. The NMCCA, however, determined that the error was harmless because Mr. White could not identify any way in

---

[2] Assigned Issue I is:

> A conflict of interest exists where the interests of an attorney and defendant diverge on a material factual or legal issue, or a course of action. Threats by regional trial counsel and a regional trial investigator towards civilian defense counsel created a conflict of interest between civilian counsel and Appellant. Did the military judge err in denying civilian counsel's motion to withdraw?

which his representation prejudiced Appellant. The NMCCA therefore denied relief. *Id.* at \*19–23, 2019 WL 937192, at \*7–8.

Although I agree with the NMCCA's conclusion that Appellant is not entitled to relief under R.C.M. 506(c), I disagree with the NMCCA's reasoning. A review of the record reveals that when Mr. White applied for permission to withdraw, he never argued that he should be allowed to withdraw *because Appellant had consented to his withdrawal*. Instead, what Mr. White argued was only that he had good cause to withdraw because he had a conflict of interest.

Perhaps Mr. White did not argue that Appellant had consented to withdraw because that argument would have been unsuccessful. As discussed above, Appellant did not desire simply to discharge Mr. White. Instead, as the military judge correctly understood, Appellant was moving to substitute a new attorney for Mr. White, which was a different kind of action governed not by R.C.M. 506(c) but instead by the rule expressed in *Montoya* that a substitution of counsel cannot impede or unreasonably delay the proceedings. The record does not support the proposition that Appellant gave "express consent" to Mr. White to withdraw if Appellant could not hire new civilian counsel.

In addition, the record does not support the NMCCA's assertion that the Government conceded that the military judge violated R.C.M. 506(c) by not allowing Mr. White to withdraw based on Appellant's consent. The NMCCA cited nothing to back up its determination that the issue was conceded, and before this Court Appellant does not argue that it was conceded. Accordingly, the only issue under this rule is whether Mr. White showed good cause to withdraw.

## B. Good Cause

Mr. White argued that he had good cause to withdraw because he had a conflict of interest. Mr. White explained that if he was somehow suspected of assisting in obstruction of witnesses, he would be tempted to defend himself even though the temptation might prejudice his client. After a thorough consideration of the issue, the military judge disagreed. The military judge ruled that Mr. White did not have an actual conflict of interest, and therefore concluded that

Mr. White had not shown good cause to withdraw under R.C.M. 506(c).

Whether a conflict of interest exists and what effect any conflict of interest has are questions that involve issues of both fact and law. *See United States v. Best*, 61 M.J. 376, 381 (C.A.A.F. 2005). In addressing such questions, this Court must accept findings of fact by the military judge unless they are clearly erroneous. *Id.* In this case, the military judge made the following finding of fact:

> [T]he court finds there are no grounds for Mr. White to believe that his representation of SSgt Watkins in this case would be negatively [a]ffected by his suspicion that the government might take adverse action against him, since those suspicions were shown to be unfounded and speculative in nature. Accordingly, the court finds that there is not good cause to permit Mr. White to withdraw from his representation of the accused in this case.

This finding of fact by the military judge is not clearly erroneous because it was supported by the testimony of the regional trial counsel and the lead Naval Criminal Investigative Services (NCIS) agent. In response to questions posed by the military judge, the regional trial counsel testified that he had no evidence that Mr. White "engaged in misconduct," "was complicit in any . . . misconduct," or "engaged in unethical behavior." He further testified that he was not "currently pursuing or contemplating any effort to report Mr. White to either of the state bars of which he is a member" or otherwise pursuing criminal action against him. The lead NCIS agent testified similarly.

Given this finding of fact, I agree with the military judge's conclusion that Mr. White did not have an actual conflict of interest. For such a conflict to have existed in this case, there must have been a "significant risk" that Mr. White's representation of Appellant could have been "materially limited by . . . a personal interest." Dep't of the Navy, Instr. 5803.IE, Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General Rule 1.7.a.(2), Encl. (1), at 39 (Jan. 20, 2015). Because the military judge found that there was no intent for adverse actions against Mr. White regarding any possible

involvement in the obstruction of justice charge, he did not have a personal interest that posed a significant risk of materially limiting his representation of Appellant.

Appellant argues that this conclusion does not end the inquiry because even when no actual conflict of interest exists, an attorney still might subjectively perceive the existence of a conflict. He asserts this perception potentially may harm the attorney's client. I agree with this point. As then-Judge Sonia Sotomayor explained in *Tueros v. Greiner*: "Although lacking an objective counterpart, a heartfelt belief on the part of counsel that she owes a duty [to a person other than the client] can wreak the same havoc on an effective defense whether she is correct or mistaken in that belief." 343 F.3d 587, 595 (2d Cir. 2003).

But a subjective belief that a conflict exists does not present the kind of structural problem that an actual conflict presents. As then-Judge Sotomayor further explained: "A purely subjective conflict is . . . an attorney's individual shortcoming, flowing from an incorrect assessment of the situation . . . . Purely subjective conflicts are, in fact, no more than a polite way of saying personal mistakes." *Id.* at 597. To be sure, a lawyer's mistake about the existence of a conflict could provide good cause if the mistake would adversely affect the attorney's representation. But following thorough questioning of Mr. White, the military judge could identify no such adverse effects in this case. The military judge concluded: "When asked to articulate a specific manner in which his representation of SSgt Watkins would be diminished in this case, Mr. White was not able to cite any actual situations that could arise where he would be unable to provide effective and zealous representation for the accused." The record confirms this conclusion. In addition, while the Supreme Court in *Holloway v. Arkansas* noted that an attorney is often in the best position to determine whether a conflict exists, it did not remove the trial judge's authority to investigate and make the final determination. 435 U.S. 475, 485–87 (1978) (stating that the trial judge has the ability to deal with counsel making motions for "dilatory purposes" and to "explor[e] the adequacy of the basis of defense counsel's representations"). I therefore would hold that

the military judge did not abuse his discretion in denying Mr. White's request to withdraw.

## III. Conclusion

For these reasons, I would affirm the judgment of the NMCCA.